DANIEL V. STEWART *vs.* JOHN R. LANKENAU COMPANY.

Suffolk.   December 8, 1926.— April 11, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Contract*, What constitutes, Construction, Of employment. *Evidence*, Letter. *Equity Pleading and Practice*, Finding by judge. *Equity Jurisdiction*, Accounting. *Estoppel. Accord and Satisfaction. Words*, "Net profits," "Invested capital."

At the hearing by a judge of a suit in equity for an accounting under a contract of employment of the plaintiff by the defendant, a corporation, the judge found that the defendant employed the plaintiff as a salesman, promising to pay him an amount equal to one third of the profits of the defendant's business after deducting eight per cent on capital invested in the business by one who was the defendant's president, treasurer and general manager, owning or controlling all of its capital stock; that the period of employment was from May 1, 1920, to December 31, 1923; that both the plaintiff and the stockholder in question were to have drawing accounts for stated amounts, but no salary or drawings by or for either of them were to be deducted as expenses from the gross income in computing the profits which the parties were to share, and a settlement was to be made between them on these terms at the end of each calendar year for the business of that year; that, during the time of the plaintiff's employment, the stockholder, without the knowledge of the plaintiff or a vote by the directors that he should draw a salary, took for himself from the profits of the defendant, in addition to the drawings agreed upon, increasingly large sums purporting to be salary and deducted them as expenses of the business before computing the plaintiff's one third of the profits. At the request of the plaintiff, the stockholder in behalf of the defendant wrote the plaintiff a letter in February, 1923, as follows: "In consideration of . . . [the plaintiff's] devoting his entire services to the . . . [defendant] the said company agrees to pay to . . . [the plaintiff] one-third of its net profits after deducting eight per cent on capital invested. It is further agreed that . . . [the plaintiff] shall have a weekly drawing account, to be mutually agreed upon. This agreement to terminate Dec. 31, 1923." The plaintiff testified in substance that this letter stated the relationship which had existed between the parties from the beginning. The defendant contended

that the letter and the plaintiff's testimony as a matter of law required the judge to make a different finding. *Held*, that

(1) The letter, in and of itself, was not a contract, but merely evidence of a contract;

(2) A finding was warranted that the parties were not undertaking and did not intend, when the letter was written, to change the terms of the agreement under which the plaintiff had been working, and that no consideration was then given for a new contract;

(3) The words "net profits" are not such words of art or fixed legal meaning that they may not have varying significations depending upon the agreement of parties, which may define the sense in which they are used;

(4) A finding was warranted, from testimony of the plaintiff concerning the letter, that he understood the words "net profits" to mean "profits" as that word was defined in the contract of employment; the different parts of his testimony in regard to this matter were not necessarily inconsistent.

A master, who heard the suit above described, found that the plaintiff was a director and clerk of the company during a part of the period of his employment, and, as such officer, signed tax returns showing the salary payment to the stockholder; that the annual statement of the defendant to the plaintiff did not disclose this information, although it appeared that the plaintiff could have discovered the fact by an examination of the books; and that the plaintiff did not know that the defendant was making up its yearly accounts upon the scheme actually employed, and that he accepted the sums sent him believing that he was being paid in accordance with his contract. There was no finding that the plaintiff intended to mislead the defendant or that the defendant had changed its position in any material respect because of the plaintiff's acceptance of payments each year without objection. The defendant contended that the plaintiff by accepting the annual payments in settlement had estopped himself from contending that further sums were due. The master declined to rule on this question but found that, in so far as this defence presented a question of fact, there was no estoppel. *Held*, that

(1) It could not be said as a matter of law that the plaintiff was bound to examine the corporation books, or to have the knowledge which such examination would give him;

(2) The plaintiff was not as a matter of law held to have the knowledge which a reading of the tax returns signed by him would have disclosed;

(3) The payments could not rightly be found to constitute an accord and satisfaction, or to be settlements of disputed claims;

(4) The plaintiff was not estopped to assert his claim.

On findings by the master, computations of the valuation of the assets of the corporation at the termination of the plaintiff's employment without the making of deductions from the book values, as shown by the inventory, were *held* not to have been erroneous as a matter of law, it appearing that the findings were definite and comprehensive, and that the master considered values, taken by him as a basis of his figures, to be approximately correct.

In computing the "invested capital" on which, by the provisions of the contract above described, the stockholder was entitled to be credited with eight per cent before the profits which the plaintiff was to share were computed, it was not necessary for the master as a matter of law to deduct amounts which he found should have been paid to the plaintiff the preceding year, but which had been left in the surplus assets as an investment, although he gave the plaintiff six per cent interest on such amounts approximately from the date when they became due.

In the accounting above described, there should have been allowed as a deduction in the nature of expenses in the computing of net profits an item paid in settlement of a claim by an architect for services rendered in respect to a proposed building on land purchased by the defendant during the period of the plaintiff's services, although the claim was not settled until after the plaintiff's services had terminated.

BILL IN EQUITY, filed in the Superior Court on October 9, 1924, for an accounting.

After a hearing by *Lummus*, J., for the limited purposes described in the opinion, where the evidence was taken by a stenographer appointed under G. L. c. 214, § 24, Equity Rule 35 (1905), the suit was referred to a master. Findings by the judge and by the master are stated in the opinion.

In making his computation to ascertain what amount the plaintiff should receive under his contract with the defendant, the master divided the periods of accounting as follows: May 1 to December 31, 1920, the year 1921, the year 1922, and the year 1923. In making his computations for each period, he started with an item "Net profit, final entry on defendant's book" at the end of that period. To that sum he added "Sum paid by defendant to John R. Lankenau for his services, charged in the books as salary"; sums paid to the plaintiff as compensation; sums paid to Lankenau as dividends; and certain excessive sums found by him to have been paid to Mrs. Lankenau as salary. The total of such sums he designated "Total net profits" for the period. From this sum he deducted eight per cent of the capital invested by Lankenau in the business during that period, and denominated the remainder, "Profit for division," one third of which he computed as the sum which should have been paid to the plaintiff for that period. Deducting from such sum the amount the plaintiff had been paid, he computed, on the difference, interest at six per cent for a period

from February 1, 1921, a date agreed upon by the plaintiff as a date from which interest should be computed, to the date of the preparation of the report.

The master found "invested capital," on which eight per cent was to be paid to Lankenau during the first period, to be $25,000. As to his method for computing that item for the second period, he found as follows: "The parties are also at issue as to the proper sum to be taken as invested capital upon which Lankenau is to get eight percent before the total of profits for division is struck. I interpret the interlocutory decree of Mr. Justice Lummus of February 20, 1925, to mean that upon such capital as Lankenau had furnished for the business which remained invested and working as a means of producing profits eight per cent is to be deducted before the total of profits for division is determined. What really happened was that under directions of Lankenau the plaintiff was paid less for the period ending December 31, 1920, than he was entitled to, with the result that the sum of money to which plaintiff was entitled and which he was not paid remained in the business. There was carried over from December 31, 1920, into capital account as of January 1, 1921, the net profits according to the books of $5,282.85 which, added to $25,000 made $30,282.85. In other words the book surplus of $5,282.50 was turned into the capital account on the ledger. The plaintiff contends that if he had been paid in full according to a proper accounting the amount of surplus would have been reduced to the extent that the plaintiff was underpaid and that Lankenau and the defendant are precluded from claiming eight per cent upon such amount as remained in the hands of the defendant through its own misconduct in failing to pay the plaintiff fully. I have found that the plaintiff was underpaid for the period ending December 31, 1920, the sum of $863.89, which sum deducted from $5,282.85, leaves $4,418.96." And he accordingly determined the invested capital for that period to be $29,418.96.

The master's findings as to the "invested capital" for the third period were: "On January 1, 1922, according to defendant's books, the invested capital was $44,782.54,

consisting of $30,282.85 and the addition of $14,499.69, which was figured on such books as the net profit for the year 1921 left in the business. I have found, however, that the plaintiff was underpaid for the period ending December 31, 1920, the sum of $863.89 and for the year of 1921 the sum of $2,881.95. I deduct the total of these two sums, which is $3,745.84 plus $53.46 for a proper tax expenditure, or $3,799.30, from $44,782.54, leaving $40,983.23 as the proper sum to be regarded as invested capital for the purposes of this accounting."

The master's findings as to invested capital as to the last period were: "I have reached my conclusion that $49,138.46 is the proper amount to be taken as invested capital by adding to $40,983.24 (the sum taken by me for 1922) the amount of net profit for 1922 carried over from surplus into capital $12,381.06, and deducting therefrom $4,225.84 which should have been paid to plaintiff at the end of 1922."

The defendant filed an exception to the computation of "Invested capital" as follows:

"8. That in figuring invested capital the master has deducted from the invested capital in each year the sums which the master finds were withheld from the plaintiff. The defendant objects to this on the ground that the allowance of six per cent interest to this plaintiff is full compensation for the sums found to be withheld."

In his computation for the last period, the master added in computing the sum to be taken by him as total net profits for the period, the following item: "6. Add the amount of loss on resale of Cambridge land bought for factory purposes by defendant and charged as an expense against profits $2,686.10." Respecting this item he found: "The parties are also at issue concerning the matters covered by item 6 above, that is for loss on resale of Cambridge land and for architect Leeds's expenses. The material facts relating to these matters are as follows: In November, 1923, defendant bought for $12,686.10 a parcel of vacant land in Cambridge, the intention of defendant being to erect on this land a three floor concrete factory with inside floor space of 20,000 square feet, the factory to be ready for occupancy in June, 1924.

No factory was ever erected or any factory structure begun. Defendant, through Lankenau, hired one Leeds, an architect, to draw plans for the proposed factory. Leeds having proposed to defendant to draw plans for a building to cost $3.25 per square foot. The plans appear to have been made by Leeds. But bids which defendant got were at the rate of $4.90 per square foot for construction expense, so defendant abandoned the idea of building a factory on the Cambridge land and in 1923 sold the land at a loss of $2686.10. Leeds sued defendant by trustee process, and the suit was settled in 1925, after an auditor had found for defendant, in order to avoid a jury trial, by defendant paying Leeds $500. The defendant also paid its attorneys $371.48 and paid for a bond to dissolve trustee process attachment $60. The total expense to defendant on the Leeds trouble was $931.48. These were charged as expenses against profits before division. I have in my statement of account not allowed these as proper charges against profits, because I have regarded them as a capital loss. There was never any talk with plaintiff about these matters. There was some talk with plaintiff by Lankenau about moving the business.''

The defendant excepted to ''the refusal of the master to allow the losses on the Cambridge land and from the Leeds suit as proper charges against profits.''

The master also found:

''Another issue concerns the proper valuation of merchandise to be taken in connection with the accounting for the final period of 1923.

''(a) Early in 1924 merchandise sold was returned, amounting to $324.96. Just what was done with this particular merchandise did not appear, except that it was 'junked,' that is, put into a job lot. What this merchandise consisted of was also left vague, Lankenau testifying that it was mostly composed of goods made to order. Although the evidence is very unsatisfactory, I find that the return meant a loss which, upon the evidence, I find to be $162.48, having in mind the fact that the change of styles constantly occurring operated to reduce the original market values, and that some of these goods were defective either in material or workman-

ship.    I have therefore allowed $162.48 in reduction of profits before division for the year 1923.

"(b) The defendant urgently contends that ten per cent should be deducted from the inventory taken as of December 31, 1923, which ten per cent is $7,415.39, and that such sum should be taken as a deduction from profits before division. Plaintiff contends that the inventory of December 31, 1923, should be taken as the proper basis of valuation.    I have adopted in my statement of account this inventory of December 31, 1923."

"The defendant made no contention that as to any period prior to the year 1923 the book inventories of December 31 in each year are not a proper basis."

As to such findings, the defendant excepted to "the finding of the master in 1923 of profits based on the inventory taken at the end of that year and failure to deduct from that inventory either three per cent, being the cash discount in the trade or ten per cent to arrive at the fair value of the inventory."

The suit was heard upon the master's report and the exceptions by the defendant thereto by *Broadhurst*, J., who filed the following rulings:

"I overrule all of the defendant's objections to the master's report except so much of the ninth as is based on the refusal of the master to allow the loss on the Cambridge land to be charged against profits.    I concur in the master's refusal to allow the expense of defending and settling the Leeds suit as a charge against profits, not because the expense should be charged against capital but because it appears and I find from the facts found by the master and the inferences fairly to be drawn therefrom that all or substantially all of said expense was incurred in 1925.

"The objection to the refusal to allow the loss on the Cambridge land to be charged against profits is sustained because the loss was incurred and the amount of it determined in 1923 while the plaintiff was still in the defendant's employ and because it must be made up, as matter of law, whether correctly described as a capital loss or otherwise, before net profits can be determined."

By order of the judge an interlocutory decree was entered accordingly and a final decree was entered directing the defendant to pay to the plaintiff the sum of $14,921.70. The defendant appealed.

*A. W. Blakemore,* for the defendant.

*C. L. Favinger,* (*D. B. Wallace* with him,) for the plaintiff.

SANDERSON, J.   This is a bill in equity brought by a former salesman of the defendant for an accounting growing out of an agreement for employment.

The defendant was engaged in the business of manufacturing and selling a special kind of dry goods and, during the time covered by the matters in controversy, John R. Lankenau was its president, treasurer and general manager, owning or controlling all of its capital stock.   The plaintiff's employment covered the period from May 1, 1920, to December 31, 1923.   By agreement, before being sent to a master for an accounting, the case was submitted to a judge of the Superior Court for the limited purpose of determining what the terms of the contract were.   The testimony heard by him is reported.   He found that the defendant employed the plaintiff as a salesman, promising to pay him an amount equal to one third of the profits of the defendant's business after deducting eight per cent on the capital invested by Lankenau in the business; that both the plaintiff and Lankenau were to have drawing accounts for stated amounts, but no salary or drawings by or for either of them were to be deducted as expenses from the gross income in computing the profits in which the parties were to share, and a settlement was to be made between them on these terms at the end of each calendar year, for the business of that year.   He also found that, during the period of the plaintiff's employment, Lankenau took for himself from the profits of the defendant, in addition to the drawings agreed upon, increasingly large sums purporting to be salary, and deducted them as expenses of the business before computing the plaintiff's one third of the profits.   There was no vote of the directors for any salary to Lankenau, and the plaintiff was not informed that these sums were being taken as salary or that they were being deducted from the profits before the

plaintiff's one third was determined. The annual statement of the defendant to the plaintiff did not disclose this information, although it appeared that the plaintiff could have discovered the fact by an examination of the books. The plaintiff was a director and clerk of the company during a part of the period of his employment.

The first question to be decided is, whether the judge was justified in reaching his conclusion as to the terms of the contract. The only part of this finding now in dispute is that relating to the manner in which salaries and drawings were to be treated in determining the profits to be divided. In this particular the finding was made upon conflicting testimony as to the terms of the oral contract of hiring. But the defendant contends that a letter, written in February, 1923, by Lankenau in behalf of the defendant and in response to a request from the plaintiff, and the testimony of the plaintiff concerning that letter, as matter of law required the judge to make a different finding. The letter was in the following terms: "In consideration of D. V. Stewart devoting his entire services to the John R. Lankenau Co., the said company agrees to pay to D. V. Stewart one-third of its net profits after deducting eight per cent on capital invested. It is further agreed that D. V. Stewart shall have a weekly drawing account, to be mutually agreed upon. This agreement to terminate Dec. 31, 1923." The plaintiff testified in substance that this letter stated the relationship which had existed between the parties from the beginning; that he understood that he had been paid in accordance with its terms, and had been satisfied with the payments; that he could have examined the books but never did, and never knew that Lankenau deducted any salary before computing the net profits; and that he believed he was being paid one third of the profits determined in accordance with the oral contract. The letter in and of itself was not a contract between the parties, but was competent evidence to prove its terms. The judge would have been justified in finding that the parties were not undertaking and did not intend, when the letter was written, to change the terms of the agreement under which the plaintiff had been working, and

that no consideration was then given for a new contract. See *Parrot* v. *Mexican Central Railway*, 207 Mass. 184, 194; *Anagnosti* v. *Almy*, 252 Mass. 492, 501; *Torrey* v. *Adams*, 254 Mass. 22, 26, 27.

The words "net profits" when used without qualification or explanation in a contract, have a fairly well established meaning in the law. *Thurston* v. *Hamblin*, 199 Mass. 151, 158. *Stein* v. *Strathmore Worsted Mills*, 221 Mass. 86. But they are not such words of art or of fixed legal meaning that they may not have varying significations depending upon the agreement of parties, which may define the sense in which they are used. *Fuller* v. *Miller*, 105 Mass. 103, 105. The judge could have found that the witness, in testifying concerning the letter, understood the words "net profits" to mean "profits" as that word was defined in the contract of employment. The different parts of his testimony in regard to this matter are not necessarily inconsistent.

The defendant contends that the plaintiff by accepting the annual payments in settlement has estopped himself from contending that further sums are now due. The master declined to rule on this question but found that in so far as this defence presented a question of fact there was no estoppel. If we assume that the questions argued are properly raised, we cannot say on this record that, as matter of law, the plaintiff has estopped himself from asserting his rights under his contract. *Warren* v. *Hodge,* 121 Mass. 106, 107. *Augello* v. *Hanover Trust Co.* 253 Mass. 160, 167. The master found that the plaintiff did not know that the defendant was making up its yearly accounts upon the scheme actually employed, and that he accepted the sums sent him believing that he was being paid in accordance with his contract. We cannot say that as matter of law the plaintiff was bound to examine the books, or to have the knowledge which such an examination would show; or that the acceptance of checks, under the circumstances, would be an accord and satisfaction. Williston, Contracts, § 1854. *Grinnell* v. *Spink*, 128 Mass. 25. *McKay* v. *Myers*, 168 Mass. 312, 315. *Barber Asphalt Paving Co.* v. *Mullen*, 220 Mass. 308, 311. Nor can it be said, as matter of law, that the plaintiff must be held

to have the knowledge which a reading of the tax returns signed by him would have disclosed.   Upon the facts found the plaintiff did not know when receiving payments of any dispute between the parties relating to the amount due him or to the terms of the contract, and these payments cannot be held to be settlements of disputed claims.   Williston, Contracts, § 128.   *Harriman* v. *Harriman*, 12 Gray, 341. *Riggs* v. *Hawley*, 116 Mass. 596.

There is no finding that the plaintiff intended to mislead the defendant or that the defendant has changed its position in any material respect because of the plaintiff's acceptance of payments each year without objection.

The defendant excepted to the master's report because, in determining the valuation of the assets at the termination of the plaintiff's employment, he made no deduction from the book values as shown by inventory, and because of his failure to make certain findings relating to that matter.   In our opinion the findings are sufficiently definite and comprehensive, and there is no reversible error in what has been included or omitted from the report on this issue.   By his findings and by his denial of the defendant's requests for changes in the valuations, the master has made it clear that he considered the valuations to be approximately correct. *Stein* v. *Strathmore Worsted Mills, supra,* page 89.

The defendant also excepted to the report because the master refused to allow to the defendant a deduction of eight per cent on the portion of the invested capital which was wrongfully withheld from the plaintiff and because he allowed the plaintiff interest on the money thus withheld. In these matters we find no error.

The defendant further excepted to the report because certain expenses, amounting to $931.48 and incurred in the settlement of an action brought by an architect for services rendered during the last year of the plaintiff's employment, were not deducted from gross income before computing profits.   The judge disallowed this item on the ground that all, or substantially all, of it was an expense incurred after the plaintiff's employment had ceased.   The delay in paying this claim was due to litigation and the master has found

that the amount paid was a reasonable and proper expenditure. Inasmuch as this was a liability incurred in 1923, the amount of it should be deducted from gross income for that year before the profits are computed. *Stein* v. *Strathmore Worsted Mills, supra,* page 92. *Daly* v. *Chapman Manuf. Co.* 246 Mass. 118.

All questions argued have been considered and no reversible error is found except in the treatment of the item relating to services of the architect. Because of this error the case is remanded to the trial court for a restatement of the account for the year 1923 by allowing a deduction from gross earnings of $931.48 in addition to the deductions therefrom made by the trial judge in his statement of the account for that year, and by making the changes in the other items of that account and in the computation of the total amount due the plaintiff thereby rendered necessary; and for the modification of the final decree by striking out $14,921.70 and inserting in place thereof the amount thus found to be due the plaintiff; when so modified the decree is affirmed.

*Ordered accordingly.*