HOMER AREY *vs.* GEORGE ASSOCIATES, INC., & others.

Worcester.     September 27, 1937. — December 28, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Equity Pleading and Practice,* Appeal; Master: exceptions to report. *Contract,* Construction. *Words,* "Invested capital," "Earnings."

An exception to a master's report will not be sustained unless the error alleged therein is disclosed in the report itself.

Upon an appeal from a final decree in a suit in equity, this court considered whether the decree was affected by any error disclosed in the report of a master, which, by an interlocutory decree not appealed from, had been confirmed "in so far as it finds facts," and did not consider unusual features of that decree as to rulings of law made by the master.

No error appeared in subsidiary findings by a master, on the issue of an alleged indebtedness of a corporation to the plaintiff under a contract

to pay him commissions calculated upon net earnings after deducting a certain percentage on invested capital and surplus, determining a rate of depreciation on real estate and an allocation of certain items as between capital and ordinary expenses according to methods agreed to and adopted by all the parties; that the corporation was not required to pay a dividend to its stockholders; that advances by a stockholder to the corporation should be treated as capital; and that the excess above par at which some of the corporation's stock was sold should not be treated as a part of its "net earnings."

BILL IN EQUITY, filed in the Superior Court on February 9, 1934.

From a final decree entered by order of *Whiting,* J., dismissing the bill, the plaintiff appealed.

*C. W. Proctor,* for the plaintiff.

*A. S. Houghton,* for the defendants.

QUA, J.   By this bill in equity the plaintiff seeks (1) To compel the defendant corporation to account to the plaintiff for a balance alleged to be due him as his share of commissions for managerial services rendered under a contract with the corporation by the terms of which the commissions were to be calculated annually upon the net earnings of the corporation, without deduction for certain taxes, but after deducting eight per cent on the invested capital and surplus, and (2) To compel the individual defendants to pay to the plaintiff such sums as might be found due him in default of payment by the corporation, on the theory that the individual defendants, as officers of the corporation, had become liable for its debts and contracts under G. L. c. 156, §§ 36, 38, by making a false report of the condition of the corporation.

The cause was referred to a master to whose report the plaintiff filed many objections, most of which were directed against the refusal of the master to make rulings requested by the plaintiff.   An interlocutory decree was entered "that the objections of the plaintiff, except in so far as they relate to rulings of law, other than incidental rulings of law be and hereby are overruled and said report be and hereby is confirmed, in so far as it finds facts."   The plaintiff did not appeal from this decree.   There was no further interlocutory decree dealing with the master's report, but

a final decree was entered dismissing the bill, from which the plaintiff appealed.

Where there is no appeal from an interlocutory decree wholly confirming a master's report, an appeal from the final decree does not reopen objections to the report, unless it appears to the full court that the rulings to which objection was made erroneously affect the final decree, and if the final decree does not appear to have been so affected, the only questions remaining open are whether the final decree is within the scope of the pleadings and supported by the facts found. G. L. (Ter. Ed.) c. 214, § 27. *Lyons* v. *Elston*, 211 Mass. 478, 482. *Fay* v. *Corbett*, 233 Mass. 403, 409, 410. *Ledoux* v. *Lariviere*, 261 Mass. 242, 244. *Carter* v. *Sullivan*, 281 Mass. 217, 219, 220. *Smith* v. *Knapp*, 297 Mass. 466. Whatever may have been the purpose of entering an interlocutory decree in the unusual form hereinbefore quoted, inasmuch as no objection to a master's report can ever be sustained unless the report itself discloses the error, *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 155, no right of the plaintiff can have been infringed by the final decree if no error appearing on the face of the report has affected that decree, and if the decree is proper upon the facts found. With these principles in mind we prefer to examine the questions which have been argued without pausing to draw fine distinctions between rulings of the master which are "incidental" and those which are not.

The master found that "there is nothing due the complainant . . . under the allegations contained in the bill of complaint and that the accounts and books . . . [of the corporation] so show and are substantially correct." The plaintiff seeks to avoid the fatal effect upon his case of this conclusion by contending that certain subsidiary findings upon which the conclusion must rest are tainted with errors and that, if those errors are corrected, it will appear that there is a balance of net earnings of the corporation in which he is entitled to share. We shall deal with these contentions *seriatim*.

(1) No error of law appears in the master's acceptance of rates of depreciation on real estate which he finds were

in accordance with the corporation's method of keeping its accounts and were agreed to by all the parties and adopted by them as fairly representing the actual probable depreciation over a period of years, which the plaintiff knew were being charged, and which he accepted "as a plan of keeping the corporation accounts by which would be determined the rights of the various parties under the then existing contracts," even though the master also finds that on some of the properties the actual depreciation was at a lesser rate for the period of about three years in question. None of the other findings is necessarily inconsistent with this. The parties could agree upon the construction of their contract, and even in the absence of agreement the practice adopted by them would be strong evidence of the true construction. *Winchester* v. *Glazier*, 152 Mass. 316, 323. *Holyoke Water Power Co.* v. *Whiting & Co. Inc.* 276 Mass. 528, 541. There is nothing to the contrary in *Stein* v. *Strathmore Worsted Mills*, 221 Mass. 86, or in *Stewart* v. *John R. Lankenau Co.* 259 Mass. 242. The items which enter into a calculation of net earnings and the method of making the calculation will of necessity vary widely in different cases, depending upon the surrounding circumstances and the nature of the contract or other source of the rights of the parties. *Fuller* v. *Miller*, 105 Mass. 103, 105. *Stewart* v. *John R. Lankenau Co.* 259 Mass. 242, 251. *Brown* v. *Pennsylvania Canal Co.* 229 Fed. 444, 449.

(2) For like reasons, in allocating items for repairs and alterations as between capital charges and ordinary expenses, an inference may well be drawn that the parties to the contract intended that net earnings should be calculated for the purposes of the contract in accordance with decisions and practices established by these parties themselves in their actual dealing with these same items.

(3) The master was not bound to rule that it was the duty of the corporation "to pay the stockholders of the corporation eight per cent on combined invested capital and surplus at the end of each year." This eight per cent was merely an arbitrary deduction set up by the contract

for the purpose of calculating the commissions. The plaintiff considers himself aggrieved because the non-payment created an "excessive surplus" upon which the next year's eight per cent deduction must be calculated. But the master has found, with an exception not material, that there was at no time more cash in the treasury than was reasonably necessary to carry on the business, and that all the interested parties knew that there were no withdrawals of the eight per cent and "acquiesced and accepted that fact as property [properly?] existing under the aforesaid contracts."

(4) No error of law appears in the master's finding that certain sums advanced to the corporation by the defendant Jerome R. George, Sr., constituted "invested capital" upon which, under the contract, the eight per cent was to be deducted. It was expected by the parties at the outset that George, Sr., would "in some manner, as appeared best to him and Arey & George," furnish the corporation, which he controlled, sufficient capital to carry on the business. These advances were made for that purpose, were reasonably necessary therefor, and "were treated by all the parties . . . as invested capital" upon which the eight per cent deduction would be figured. No interest was paid upon these sums. They seem to have remained with the corporation, in varying amounts, during the period here involved. There was an understanding between George, Sr., and the corporation that stock should be issued for these sums, and ultimately, although after business relations with the plaintiff had ceased, stock was issued for the amount advanced. In view of these subsidiary findings, and without a report of the evidence, it is impossible for us to say as matter of law that these advances were not invested capital within the meaning of this particular contract as applied to the special circumstances of the defendant corporation. Decisions defining "invested capital" under other circumstances are not controlling.

(5) The master was not required to rule that the premium upon stock which the corporation sold above par formed part of the "net earnings" upon which the commis-

sions were to be calculated. Money received by a corporation from the sale of its stock would not commonly be thought of as money earned. "Earnings" are won as a recompense for service or exertion. *Jenks* v. *Dyer*, 102 Mass. 235, 236. *Kendall* v. *Kingsley*, 120 Mass. 94. The word "earnings" is not necessarily synonymous with "gains" or "profits." The master has found that when the contract was made revenue from premiums was not contemplated or sought to be dealt with in the contract, nor was it in the minds of the parties when discussing accounts or profits. In so far as lay within his province the master found as a fact that the premiums were not "net earnings" as those words were used in the contract. We cannot say that the premiums are so plainly "earnings" that such a finding on any evidence which might have been before the master would be legally impossible. The issue is very different when the question arises between life tenant and remainderman, as in *Smith* v. *Cotting*, 231 Mass. 42, 46-49.

(6) If premiums on stock actually sold are not to be included in net earnings, it is plain that premiums which might have been realized upon stock which the corporation voted to issue but did not in fact sell, within the accounting period, cannot be so included.

It seems to us that one more finding of the master should be mentioned because of its possible bearing upon the several claims of the plaintiff, although none of the parties has based any argument upon it, and we have found no need to rely upon it. The master finds that after a discussion in 1927 certain changes were made in the bookkeeping, and the salaries of the plaintiff and of the defendant George, Jr., were increased, and that by entering into this arrangement the corporation and the individual parties "accepted it as squaring up to that date all obligations, if any, existing between the parties as to the profit and loss of the corporation and the amount to be paid to Arey & George, Jr. for services, either as salary, bonus or commission."

As the plaintiff has failed to establish that the defendant corporation owes him a debt, the individual defendants are not liable as officers.

We have considered all contentions argued and have discussed all alleged errors which might be thought to have affected the final decree, and we do not discover any error entering into that decree.

*Decree affirmed with costs of appeal.*