## Dunn v. Dunn.

April 30, 1946.

Clay & Clay and B. J. Bethurum for appellant.

Henry Jackson, Jay W. Harlan, and J. G. Davis for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellant and appellee, who are brothers, entered into the following agreement:

"This Agreement made this January 1, 1940, between Walter S. Dunn of the one part and Robert Dunn, of the other part, Witnesseth: That it is agreed that said Robert will during the year 1940 be associated with and assist said Walter in his, the said Walter's, Texaco gasoline and petroleum business, including roofing, in Boyle County and in other counties in which said Walter has conducted and will conduct his said business, and that said Robert will faithfully engage in and attend to the selling and making of sales of gasoline and petroleum products and merchandise sold by said Walter and the calling on dealers for the purpose of making sales and keeping and increasing the business of said Walter and advancing the said business and all business interests

in connection with said Walter's gasoline and petroleum business and other products handled, sold or carried in connection with such petroleum and gasoline business; the said Robert to give and furnish his personal services, time and attention faithfully in connection with said business and in serving and advancing same at all times.

"The said Walter agrees to and guarantees to the said Robert, as compensation, not less than One Hundred and Fifty ($150.00) Dollars per month, payable at the end of each month for which services and assistance has been rendered, also to furnish said Robert an automobile and necessary gasoline and oil for the operation thereof, to be used by said Robert in connection with his said work, calling upon dealers in soliciting and advancing sales and trades.

"It is understood that the past two years will be taken as a basis in arriving at what the net profits of said business has been, and that at such time during said Robert's services hereunder as the net profits shall increase over what they have been for said average to be taken from said two year period, then and in that event, said Robert will be entitled to and will receive the one-half of any such net profits, (W. P. A. trade or contracts however not being embraced or included in this undertaking), however, the net profits to be received by said Robert hereunder will be a credit to said Walter as against said one hundred and fifty ($150.00) dollars per month guaranteed salary, and said Walter will be liable for the payment of the guaranteed salary to the extent that said Robert's fifty per cent of such net profits are not sufficient to satisfy the guaranteed indebtedness—shall the net profits be more than sufficient to satisfy the guaranteed salary said Robert, of course, will receive his full fifty per cent thereof, however large the total thereof may prove to be.

"This agreement is made for the present calendar year 1940, from January 1, up to January 1, 1941, and will be renewable at the will of the parties hereto, from year to year, by so endorsing their intentions on this writing.

"W. S. Dunn
"Robert B. Dunn."

The monthly salary or guarantee later was raised to Two Hundred Dollars ($200), and amounted to the sum

total of Thirty-Eight Hundred Dollars ($3800) for the years 1940 and 1941. The contract was not renewed for the year 1942. Failing to agree with appellee's method of calculation in arriving at the net profits, appellant instituted this action to recover the sum of Two Thousand Eighty-Nine Dollars and Seventy-Seven Cents ($2,089.77), which he contends is due him under proper accounting. The sole question for our determination is the method of calculation to be adopted to ascertain the net profits of the business. Appellant contends for the method adopted by the Master Commissioner, to whose report the Chancellor sustained exceptions; appellee contends for the method adopted by the Chancellor.

Appellant does not complain of any specific item of expense, but only of the method adopted. The evidence discloses that the expenses of operating the firm for the years 1940 and 1941 were greater than for the years 1938 and 1939; it likewise discloses an increase in the gross receipts, although the increased expenses were relatively greater than the increased receipts. The increase in gross receipts is represented by the sale and distribution of approximately four hundred fifty thousand gallons of gasoline more than was sold in the years 1938 and 1939. Appellant introduced an oil and gasoline distributor, who testified that, as a guess, he thought the increased expense of handling this increased business would be about twelve per cent (12%). The witness's estimate of this increase admittedly was, as we have said, mere speculation, and is of no probative value; nevertheless, the Master Commissioner disregarded the uncontradicted proof of the actual expenses for 1940 and 1941, and estimated them by adding twelve per cent to the total expenses incurred in the years 1938 and 1939, and allowed that total as a reasonable deduction to be made from the gross receipts for the purpose of determining the net profits.

We are unable to agree with this method of arriving at net profits. Webster defines "gross profits" to be: "the excess of gross receipts over the expenditures directly involved in production or purchase, not deducting for interest, insurance, or even, for some purposes, general expenses of management, etc.," and defines "net profits" to be: "the net proceeds obtained by deducting from the gross proceeds all forms of expense or outlay involved in, or incidental to, the business in question,

as in calculating the annual profit of a business, where insurance, wages, and other items of current expense are deducted, or often, also, interest, wear and tear, etc., but not any abnormal appreciation or depreciation of the capital employed.''

"Net profits" is defined by Ballentine, in his Law Dictionary, at page 866, as: ''The gain which accrues on an investment after deducting expenses and losses. The words define themselves. They mean what shall remain, as the clear gains of any business venture, after deducting the capital invested in the business, the expenses incurred in its conduct, and the losses sustained in its prosecution.''

In 39 C. J., sec. 245, p. 179, it is said: ''Legitimate expenses, as the term is used in defining net profits, are expenditures, *actually made*, which can reasonably be said to enter into the cost of carrying on the business of the employer during the period of the employee's service, or a part thereof constituting one of the employer's fiscal periods.'' (Our emphasis.)

Thus it will be seen that the actual legitimate expenses of the business must be deducted from the gross proceeds to arrive at the net profits, even though in the one year they may exceed the expenses incurred in another; and this was the method adopted by the Chancellor in arriving at his decision. To detail the individual items of expense would extend this opinion beyond reasonable limits; and since appellant has not called our attention to any distinct item as being unreasonable, we deem it unnecessary to discuss the evidence in detail. The Chancellor disallowed certain items contended for by appellee, and, in our opinion, erroneously allowed one item as expense, viz., the Thirty-Eight Hundred Dollars ($3800) advanced to appellant as monthly compensation. But the disallowance of this item will not change the decision, because, with its elimination, the net profit for 1940 and 1941 would be Six Thousand Thirteen Dollars and Seventy Cents ($6,013.70), appellant's share of which would be Three Thousand Six Dollars and Eighty-Five Cents ($3,006.85). Since appellant, by way of monthly advancements, already has received more than his share of the net profits, he is not entitled to recover any additional sum.

The judgment is affirmed.