## HARVEY

### v.

## MISSOURI VALLEY ELECTRIC CO.

### No. 43895.

Supreme Court of Missouri.

Division No. 1.

May 10, 1954.

Rehearing Denied June 14, 1954.

Ward A. Dorsey, John G. Brannon, S. Preston Williams, No. Kansas City, for appellant.

Watson, Ess, Whittaker, Marshall & Enggas, by Charles E. Whittaker, Kansas City, for respondent.

COIL, Commissioner.

This case involves the construction of a corporate resolution providing for "profit-sharing bonuses." Trial below by the court on an agreed statement of facts resulted in judgment for plaintiff for the amount admittedly due and tendered by defendant. Plaintiff-appellant, prior to and including 1948 and until June 15, 1951, was a director, vice-president, and stockholder in defendant-respondent corporation. For the period involved, 95% of defendant's outstanding stock was owned by R. B. Brownlee, president, and J. M. Oehler, secretary, husband and wife. The corporation was on a cash accounting basis for all expense items except accounts payable for merchandise, and its fiscal year was the calendar year.

At a directors' meeting on March 10, 1948, the following resolution was duly passed and adopted:

"It is the further judgment of this board that the personal element in this company's success should be recognized in the following manner.

"Profit-sharing bonuses are hereby set up to be paid as soon as practicable following the close of each year's business. These percentages are to be applied to the net profits before income taxes, but after allowing a deduction of 10% of net worth as of the end of the year to cover nominal earnings on the invested capital.

| | |
|---|---|
| R. B. Brownlee, President | 25% |
| J. M. Harvey, Vice-President | 10% |
| J. M. Oehler, Secretary | 5% |
| E. K. Owen, Treasurer | 5% |

"This compensation plan is effective for the calendar year 1948 and is to continue

for succeeding years on the same basis unless changed by vote of this board."

On September 19, 1949, plaintiff received the corporation's check for $14,522.81 as his 10% profit-sharing bonus for 1948 pursuant to the resolution. "Net profits" were computed by deducting from gross income, among other things, the current monthly salaries paid to Brownlee, Harvey, and Oehler during 1948, and additional salaries paid them for 1946 and 1947 (in the aggregate sum of $35,893.58) pursuant to another resolution also adopted on March 10, 1948. There is no contention that the bonus for 1948 was incorrectly computed.

On July 28, 1950, appellant received the corporation's check for $2,559.44 which purported to be his profit-sharing bonus for 1949. "Net profits" for 1949 were computed by deducting from 1949 gross income the profit-sharing bonuses paid to the four officers in 1949 for 1948. And the amounts due as profit-sharing bonuses for 1950 were computed by deducting from 1950 gross income the profit-sharing bonuses paid the four officers in 1950 for 1949. So, also, the amounts due as profit-sharing bonuses for 1951 were computed by deducting from 1951 gross income the profit-sharing bonuses paid in 1951 for 1950. (We are concerned only with the propriety of the bonus deductions and there is no dispute as to the propriety of deducting other items including salaries, other expenses, and the 10% of net worth provided for in the resolution.)

Plaintiff resigned as an officer on June 15, 1951, but at trial time was a stockholder. The bonus checks (computed as indicated) for 1950 and for 5½ months of 1951 were tendered to plaintiff and refused. The record does not show when in 1951 the check for the 1950 bonus was tendered, i. e., whether before or after appellant's resignation.

Plaintiff claimed below that there was $20,423.02 due him for 1950 and the 5½ months of 1951 pursuant to the profit-sharing bonus resolution. Respondent admitted that there was due $11,154.43 for those periods and tendered that sum. The amount in dispute therefore was and is $9,268.59.

The essential dispute between the parties is the meaning of the words "net profits" as used in the profit-sharing bonus resolution. More specifically, was it the intention of the parties that, in computing "net profits" for a given year, the bonus payments made during that year (for the payments due on the "net profits" of the preceding year) should be deducted? Or, more concretely, and to simplify the problem, if, at the close of business in 1949, 10% of the "net profits" (eliminating from consideration any profit-sharing bonus payments) was $1,000 and that $1,000 (for 1949) was actually paid in 1950, then, in determining "net profits" for 1950, should the $1,000 be deducted from 1950 gross income?

The parties agree that the profit-sharing bonus provided for in the resolution was compensation for services. Defendant takes the position that, once it has been agreed that the proposed profit-sharing bonus was compensation, any possible question as to the correctness of defendant's computation is eliminated. Defendant says that inasmuch as the bonus payments represented compensation for services, they were normal expenses of business and, inasmuch as respondent was on a cash basis, normal business expenses must have been deducted from gross income in the year paid to determine "net profits" for that year. Income taxwise, defendant's argument is sound. But in our view, the problem is not so simple. It does not necessarily follow that because the profit-sharing bonus payments are compensation, and that payment of such compensation is a deductible item in the year paid in computing "net profits" for income tax purposes, that such payments are necessarily deductible in computing the amount due under a profit-sharing bonus plan.

The meaning of "net profits" and what is included therein varies according to the context in which, and the circumstances under which, the words are used. "The words in bookkeeping language mean a balance, or what remains after something has been de-

ducted. What the deduction shall be, or what it shall include, must be determined from the occasion for the use of the words, or from the context * * . *." Iowa Southern Utilities Co. v. Cassill, 8 Cir., 69 F.2d 703, 707.

Plaintiff contends that a payment in a subsequent year of what was due under a bonus compensation plan, based on the "net profits" of a prior year, is in reality only a distribution of the bonus theretofore earned; and that the very purpose of a bonus compensation plan is defeated by the accounting method employed by defendant in the instant case.

It has been said that: "It is contrary to the concept of profit-sharing to have any part of the bonus charged against the recipients' share of the profits." Winkelman v. General Motors Corp., D.C.S.D.N.Y., 44 F.Supp. 960, 1000; Diamond v. Davis, Sup., 62 N.Y.S.2d 181, 193.

The words "net profits" as used in a profit-sharing plan may or may not mean that in computing the bonus fund, all or part of the proposed bonus payments are to be deducted; and may or may not mean that the bonus payments made in a given year are to be deducted as normal business expense in determining "net profits" for profit-sharing plan purposes for that year. See: 51 Col.L.R. 867, 871–875.

The instant resolution provides that income taxes are not to be deducted as expense items in determining "net profits," and that 10% of the net worth at the end of each year is to be deducted from "net profits" in determining the amount of the "bonus fund." Other than these provisions, the resolution contains no formula for ascertaining the amount of the "bonus fund." And only the first of these provisions has anything to do with "net profits." Deductions of bonus payments are neither provided for nor precluded by any specific language in the resolution. Thus, the language of the resolution does not aid us in construing the meaning of "net profits" as there used.

In construing this resolution, as in construing any other kind of an agreement, we attempt to ascertain the intention of the parties. We find no circumstances set forth in the agreed statement of facts which aid us in arriving at that intention, other than the instantly decisive construction which the parties themselves have given the resolution. We have noted that plaintiff received his bonus payment for 1948, based upon a computation which deducted the payment of additional salaries (paid in 1948) for 1946 and 1947 in determining "net profits" for 1948. These additional salaries, paid in 1948 and deducted as an expense in determining "net profits" for 1948, were in legal effect like the bonus payments deducted in 1949. In 1950 plaintiff received his bonus check for 1949 based upon a computation which deducted the bonus payments made in 1949 (based upon 1948 "net profits") in arriving at the 1949 "net profits." There is nothing in the record to show that plaintiff protested, at the time of receipt of these two checks or at any time thereafter until this suit was filed, that defendant's accounting methods for determining bonuses were incorrect or contrary to the intention of the parties. In so far as the record shows, plaintiff received and accepted the checks (and, more particularly, the check for 1949 paid in 1950) as though they correctly represented the amounts due him and as though they had been computed upon the basis which the parties intended by the resolution. And, in this connection, we consider that plaintiff was vice-president and must have known of the accounting method used by the corporation to determine the bonus payments. True, plaintiff did not accept the checks for 1950 and 1951. But, as the payment for 1948 was not made until September 1949 and the payment for 1949 was not made until July 28, 1950, it is fairly inferable, in the absence of anything to the contrary, that the payment for 1950 was not tendered to plaintiff until after his resignation on June 15, 1951. We think, under the circumstances, that defendant is justified in its assertion that plaintiff's present position was not adopted until after he had resigned.

Thus, while a different construction of the resolution might result were we construing it before the parties had acted under it, nevertheless, in view of the meaning ascribed to "net profits" by the parties concerned as indicated by their conduct, we may not say that the method used by defendant in determining the amount of the bonus payments was an unreasonable or incorrect method, or one contrary to the intention of the parties.

Arey v. George Associates, Inc., 299 Mass. 130, 12 N.E.2d 84, was a bill to compel an accounting for a balance claimed by plaintiff as a share of commissions for managerial services under an agreement that such commissions were to be calculated on the net earnings of the corporation without deduction for certain taxes but after deducting 8% on the invested capital and surplus. The court said in 12 N.E.2d at page 86: "The parties could agree upon the construction of their contract, and even in the absence of agreement the practice adopted by them would be strong evidence of the true construction. * * * The items which enter into a calculation of net earnings and the method of making the calculation will of necessity vary widely in different cases, depending upon the surrounding circumstances and the nature of the contract or other source of the rights of the parties." And see: Gabel-Lockhart v. Gabel, 360 Mo. 518, 528, 229 S.W.2d 539, 543[3], 545[6].

Plaintiff relies upon the three cases cited in footnote 1. No purpose will be served by reviewing those cases. For, whether, on the broad question of deductibility of expenses in determining "net profits" those cases are generally pertinent as plaintiff contends or wholly inapplicable as defendant contends, our conclusion herein (based as it is upon the interpretation of the resolution by the parties themselves) makes the opinions in those cases of no significance here.

The judgment is affirmed.

1. McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911; Briggs v. Groves, 56 Hun. 643, 9 N.Y.S. 705, affirmed 132 N.Y. 545, 30 N.E. 865; Dunn v. Dunn, 302 Ky. 188, 194 S.W.2d 372.

VAN OSDOL, and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.