MORRIS SELZ *et al.*

*v.*

HENRY K. BUEL.

*Filed at Ottawa November 20, 1882.*

1. CONTRACT—*for services to be paid by a share of net profits construed as to allowance of interest on loans as part of expenses.* A contract for the employment of a salesman for a series of years provided that the salesman should be paid for his services annually a sum equal to one-fifth of the net profits of the business, which sum it was guaranteed should not be less than $7500 a year, and that at the end of each year the gross profits of the business should be ascertained, from which should be deducted the total expenses and losses incurred in such year in the business of the employers, and that a sum which should be equal to one-fifth of the residue should be the compensation, and provided further that the house should be charged with ten per cent on the actual cost of certain goods manufactured elsewhere, on four months' time, with interest, and that the salesman was not to be regarded as a partner in the business: *Held,* that in the absence of any special agreement, or custom having the force of law, to the contrary, the employers could not charge in the expense account the interest paid by them on temporary loans for money used in the business, and that it was no concern of the salesman whether his employers had the ready means to carry on the business, or would be compelled to borrow the whole or any part of it for that purpose.

2. Where a salesman in a wholesale house is employed to be paid as his salary or compensation a sum equal to one-fifth of the net profits of the business of his employers at the place where he is employed, with a guaranty that such sum shall be equal to $7500 per year, the compensation so to be paid him will not be estimated as a part of the expenses to be deducted from the gross profits of the business. A different construction would require the salesman to pay one-fifth of his own salary after reaching $7500.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

In the fall of 1872, appellants, under the firm name of Morris Selz & Co., were engaged in the wholesale shoe and boot business at Chicago, and in the manufacture of shoes and boots at Joliet, with which they, in whole or in part, supplied their Chicago house. While the business of the firm was being thus carried on, on the 1st day of November of that year Henry K. Buel, the appellee, as party of the first part, entered into a written contract with the appellants, as parties of the second part, by the terms of which Buel engaged to enter the employment of the latter, and serve them as salesman in their house at Chicago, for a period of four years, from the 1st of January, 1873, for which the appellants agreed to pay him annually a sum equal to one-fifth of the net profits of the business done at the Chicago house, and by a further provision of the contract guaranteed one-fifth of the net profits to be at least $7500 a year. The manner of conducting the business, and the mode of ascertaining the net profits, are specifically provided for in the agreement itself, as follows:

"At the end of each year of said period the gross profits of the business conducted at the Chicago store of said firm shall be ascertained, and from the sum of said gross profits shall be deducted the total expenses and losses incurred in such year in said business, and a sum which shall be equal to one-fifth part of the residue shall be said compensation; and in no case shall said party of the first part receive or draw from the funds of said firm in any one month a sum greater than six hundred and twenty-five dollars ($625), until the expiration of each year, when his total annual compensation shall be determined. And said parties of the second part further covenant and agree, to and with the said party of the first part, that the entire product of the manufactory of said

parties of the second part, at Joliet, Illinois, shall be shipped to and disposed of at their store in Chicago, and that said product shall be invoiced to said store at the rate of ten per cent above and in addition to the actual cost of the same, on four months' time, with interest at the rate of ten per cent per annum, to be charged the Chicago house of said firm after the expiration of four months from date of sale; but interest at the rate of ten per cent per annum is to be allowed the said Chicago house on all payments made within four months, such cost of said product being determined in the same way and upon the same basis that the cost thereof is determined at the present time."

It was also expressly provided in the agreement that Buel was not to be regarded as a partner in the business. At the expiration of this contract, on the 31st of December, Buel, by a verbal contract with the firm, agreed to continue in their service, as salesman, at a fixed salary of $7500 a year, which he did till the 31st of January, 1878, Butler having in the meantime, in November, 1877, withdrawn from the firm. At the end of this last service the firm, as then composed, had a settlement with Buel which was satisfactory to both parties. He gave them a receipt acknowledging payment in full for his services, and did not at that time interpose any claim on account of his services under the original written contract.

During appellee's four years' service under that contract, appellants settled with him annually, at the rate of $7500 a year, they from year to year informing him the net profits of the business did not exceed that sum. It does not appear that appellants, during this period, ever furnished appellee any formal exhibit or statement showing the amount of business done by the firm, its receipts, disbursements, expenses, etc., from which appellee could intelligently determine for himself whether he had received all the compensation for his services he was entitled to under the contract.

Matters remained in this condition about eighteen months after the original contract had expired, when appellee filed in the Superior Court of Cook county the present bill, by which he seeks to compel appellants to make a full and complete exhibit of their entire business, receipts and expenditures during the existence of the contract, in order that the true amount of the net profits realized by the appellants may be made to distinctly appear, and to compel them to account to appellee for what shall appear to be due him from such exhibit.

As explanatory of appellee's delay in taking steps to ascertain whether he was entitled to anything additional under the agreement, and of his apparent acquiescence in the settlements made by appellants to him from year to year with respect to the amount of net profits, the bill, among other things, contains the following statement: "That at the end of each year of said term he asked the active members of said firm for a statement of the net profits of the business of the said Chicago house, in order to ascertain the amount of his salary for that year, under the said agreement, and was always informed by them, and put off with the statement, that the net profits of the year were not sufficient to entitle him to any sum as salary in excess of the $7500, which he had then already drawn during the year; that while he would be surprised and disappointed at such information and statements, he felt unwilling to dispute and deny their truthfulness, especially as he had no means or facilities to verify their untruthfulness; and not being able himself, for the reasons above stated, to make a personal, thorough and accurate examination of the books and accounts of the business, both of manufacturing and selling, he took no action in the matter, but for the time relied and acted upon the information and statements so given and made to him, as true."

On the hearing, the Superior Court found the equities with the complainant, and entered the following decree fixing the

rights of the parties, and directing a reference to one of the masters of the court for the purpose of stating the account, namely:

"It is hereby ordered, adjudged and decreed that the complainant is entitled to an account, as prayed for in his said bill; that this cause be referred to Benjamin D. Magruder, Esq., one of the masters of this court, to take an account of the compensation or salary earned by the complainant while in the employ of the defendants, under the terms of the agreement in writing between them, dated 1st November, A. D. 1872, for the years 1873, 1874, 1875 and 1876, respectively, and that in taking said account the said master will—

"*First*—Ascertain for each of said years separately the amount of the entire product of the manufactory of the said defendants at Joliet, Illinois, and charge so much thereof to the Chicago store of said defendants as was shipped by them to and disposed of at their said Chicago store, at the rate of ten per cent above and in addition to the actual cost of the same on four months' time, with interest at the rate of ten per cent per annum, to be charged to the Chicago house of the defendants after the expiration of four months from date of sale by the said Joliet manufactory of the defendants to the Chicago house of the defendants, and interest at the same rate to be allowed to the said Chicago house on all payments made by it to the Joliet manufactory within four months after such sale, such cost of said product to be ascertained and determined by the master in the same way and upon the same basis that the cost thereof was determined at the date of said agreement, to-wit, on the 1st day of November, 1872.

"*Second*—Ascertain the gross profits of the business of the defendants conducted at their said Chicago store for each of said years separately, and from the sum of said gross profits deduct the total expenses and losses incurred in such year in said business, and state and report the amount of

one-fifth part of the residue. And in so ascertaining the net profits of the business of the defendants conducted at their said Chicago store, the master will charge the said business for each of said years with the amount of the product of the defendants' manufactory at said Joliet which was shipped to and disposed of at said Chicago store in each of said years, at the actual cost thereof, to be ascertained by the master as above directed. And in ascertaining the total expenses for each year of the business of the said defendants conducted at their Chicago store, the master shall not, in one computation, but shall in another, include any sum or sums of money paid by the defendants to the complainant during the year on account of compensation for his services to the defendants under said agreement for that year.

"*Third*—If one-fifth part of the net profits of the business conducted at the Chicago store of the defendants, ascertained on the basis aforesaid, shall for any or either of the said four years exceed the sum of $7500, which the complainant admits has already been paid to him by the defendants under such agreement, the master will state the amount of such excess for every such year separately, with interest thereon from the end of such year. And if there shall be no such excess for any one or more of such years, the master will state that fact for every such year separately."

The account, as stated by the master, shows appellants to be in arrears with appellee on account of his salary in the sum of $11,349.59,—$3224.46 being for interest on the annual balances to which appellee was entitled under the contract. Exceptions to the master's report having been overruled, a final decree was rendered by the court in favor of appellee and against the appellants for the above sum of $11,349.59, and costs, and this decree, on appeal, was affirmed by the Appellate Court for the First District, and the appellants appealed to this court.

Mr. FRANCIS H. KALES, for the appellants:

A settlement of an account will not be opened in equity upon the mere allegation that the party had no means of ascertaining whether the grounds of the settlement had been properly stated by the other party, without charging and proving specific acts of fraud. Parsons on Partnership, 560; *Darthey* v. *Lee,* 2 Y. & C. (E. & Ch. in Equity,) 5.

There was nothing due complainant. He was only entitled to a share of the net profits. To arrive at this, interest on temporary loans paid by the firm should have been deducted from the receipts. *Reynolds* v. *Mardis,* 17 Ala. 32; *Stewart* v. *McKichan,* 74 Ill. 122; *Weaver* v. *Upton,* 7 Ired. L. 458; 1 Collyer on Partnership, sec. 318; 2 Lindley on Partnership, 787; Parsons on Partnership, 252, note y.

In estimating the net profits to arrive at Buel's compensation, his salary should have been deducted from the receipts. He had no interest in the profits. *Berthold* v. *Smith,* 24 How. 526; *Hargrave* v. *Conroy,* 4 C. E. Green, 19 N. J. 281.

The interest decreed to Buel did not become due on an instrument in writing, and therefore he was entitled to no interest. Rev. Stat. chap. 74, sec. 2; *Jassoy* v. *Horn,* 64 Ill. 379; *Ditch* v. *Vollhardt,* 82 id. 134; *Rishton* v. *Grissell,* L. R. 10 Eq. 393.

Messrs. EDSALL, HAWLEY & EDSALL, for the appellee:

Where the compensation of a salesman depends upon the net profits of his employer, equity may take jurisdiction to decree an account. 1 Story's Eq. Jur. secs. 441, 450, 452, 459; *Craig* v. *McKinnay,* 72 Ill. 312; *Patten* v. *Patten,* 75 id. 446.

The right to an account of profits exists as well where an employé is to be paid in proportion to profits, as in cases where the controversy is between the members of a partnership. Bisset on Partnership, 14; *Harrington* v. *Churchward,*

6 Jur. (N. S.) 576; *Hargrave* v. *Conroy,* 19 N. J. Eq. 281;
*Rishton* v. *Grissell,* 5 L. R. Eq. 326.

There was no error in refusing to deduct from the gross
profits the money drawn by Buel during the year on account
of the one-fifth part of the net profits, and the interest on
temporary loans.    *Rishton* v. *Grissell,* 5 L. R. Eq. 326.

Partners, as between themselves, are not entitled to interest
on their respective capitals employed in the business, unless
there is some agreement to that effect.    2 Lindley on Part-
nership, 786; *Desha* v. *Smith,* 20 Ala. 747; *Tutt* v. *Land,*
50 Ga. 339; *Brown's Appeal,* 89 Pa. St. 139; *Gilman* v.
*Vaughan,* 44 Wis. 646; *Dexter* v. *Arnold,* 3 Mason, 289;
*Tirrell* v. *Jones,* 39 Cal. 655; *Moss* v. *McCall,* 75 Ill. 190;
*Gage* v. *Parmalee,* 87 id. 334; *Topping* v. *Paddock,* 92 id. 92.

This money being due on an instrument in writing, interest
was properly allowed.    Rev. Stat. chap. 74, sec. 52.


Mr. JUSTICE MULKEY delivered the opinion of the Court:

There are but two questions presented by this record which,
in our judgment, require special notice.    One arises upon an
exception to the master's report, and the other upon the direc-
tions of the court to the master with respect to the manner
of taking the account.

The master, in stating the account, refused to charge to
the expense account interest paid by the Chicago house on
temporary loans, and upon an exception taken by the appel-
lants the master's ruling was sustained by the Superior Court,
and this is assigned for error.

It is first to be observed, that while the agreement between
the parties is unusually full and specific in its details with
respect to the manner of conducting the business and keeping
the accounts between the two houses, we find no provision
in it which in terms authorizes such a charge, so that if
warranted at all, it must be upon general business principles,

9—105 ILL.

or by some local or special usage, of which both contracting parties must appear to have been cognizant, and may therefore be presumed to have contracted with reference to it. The only evidence which can be regarded as looking in this direction, is that which tends to show appellants had previously been in the habit of keeping their books in this manner; but this, of itself, is not sufficient to establish a local or particular usage which would be binding upon appellee, especially as there is nothing to show he had any knowledge of their previous method of doing business. The absence of any specific provision in the agreement upon this subject is the more significant in view of the fact the contract does expressly provide for charging interest under certain contingencies. It is therefore reasonable to presume that if the parties had intended that interest should be charged under circumstances other than those specified in the agreement, they would have said so. But they have not done this, and we are not authorized to do it for them.

Nor are we aware of any general usage or custom, having the force of law, which, under the agreement in question, would authorize charging to the expense account interest on temporary loans, as was attempted to be done in this case, hence we are of opinion the master properly rejected these charges in stating the account. Under the agreement it was clearly the duty of the appellants to furnish the capital necessary to carry on the business contemplated by the contract, and whether they had it in ready means, or would be compelled to borrow the whole or a part of it, and if so, whether the loans would be for long or short periods, or whether the rates of interest would be high or low, were matters about which appellee, in a legal sense, had not the slightest interest or concern.

It is further contended by the appellants, that in ascertaining the amount of net profits made by the Chicago house, the compensation to be paid appellee for his services is to be

estimated as part of the expenses of the concern. We do not think this was the understanding of the parties, and when considered in the light of ordinary practical business experience, we are of opinion the terms of the agreement do not admit of such a construction. It is true, by resorting to some of the more difficult processes of mathematics, or even of higher arithmetic, unused and unknown in common business transactions, effect might be given to the contract in the manner suggested by appellants; but a very small proportion of business men would be able to do so. The effect of this construction of the agreement would be to compel appellee to pay one-fifth of his own salary after his share of the profits reaches $7500 per annum, while under the contract, as we understand it, he is to pay no part of it.

Moreover, while the agreement declares that a particular calculation shall be made for the purpose of ascertaining the amount of appellee's compensation, the construction contended for requires the amount of compensation actually paid to be taken as a factor in a calculation, the only object of which is to ascertain what that amount is,—or, differently put, it requires the compensation to be first paid, and then directs a computation to be made to ascertain the amount of it. The contract in effect is, that appellee shall have, as compensation for his services, an amount equal to one-fifth of the net profits, let the sum be great or small, and if less than $7500 annually, the appellants, by a distinct and separate provision of the contract, bind themselves to make up the deficit. This latter provision does not at all affect the construction that is to be given to the other parts of the agreement. Supposing it had been omitted altogether, the contract then would have simply required appellants to pay appellee, as compensation, a sum equal to one-fifth of the net profits, whatever they might be, and it would certainly be difficult to distinguish a contract of this kind from a simple undertaking to pay one-fifth of the net profits. If we strike

out from the contract the words, "*a sum which shall be equal to,*" it would then read: "At the end of each year of said period the gross profits of the business conducted at the Chicago store of said firm shall be ascertained, and from the sum of said gross profits shall be deducted the total expenses and losses incurred in such year in said business, and \* \* \* one-fifth part of the residue shall be said compensation," etc.   If the contract read in this manner, we presume there would be no pretense for the claim that appellee's compensation should be treated as a part of the expenses in ascertaining its amount, and yet on principle we are unable to perceive why the insertion of those words would require a different construction.   That form of expression was probably used with a view of negativing the idea that appellee's compensation was payable only out of a particular fund,— namely, out of the profits, as such.   A promise to pay a sum of money equal to $1000, is in law simply an undertaking to pay $1000.   The same legal consequences attach to either form of expression.

The decree of the Superior Court being in conformity with the view we have taken of the questions discussed, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*