RICHARD NEESON, Defendant in Error, *vs.* THE SANGAMON COUNTY MINING COMPANY *et al.* Plaintiffs in Error.

*Opinion filed April 24, 1925.*

1. ACCOUNTING—*what are net profits.* Net profits constitute what remains as clear gains of any business venture after deducting the capital invested in the business, the expenditures incurred in its conduct and the losses sustained in its prosecution.

2. SAME—*what may be deducted by coal company in accounting of net profits under a wage contract with superintendent.* In an action by the superintendent of a mining company for an accounting under a contract for a certain per cent of the net profits as a part of his salary or wages, the company may deduct as expenses of the business the depreciation and depletion of capital, including the value of coal taken out in the progress of the business for the time covered by the accounting and also income taxes paid for such period.

HEARD, J., took no part.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

BROWN, HAY & STEPHENS, for plaintiff in error.

ROBERT H. PATTON, A. W. KERR, and NOAH C. BAINUM, for defendant in error.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The defendant in error, Richard Neeson, filed his bill in the circuit court of Sangamon county against the Sangamon County Mining Company and W. A. Brewerton for an accounting, to ascertain the amount due him for services while acting as superintendent of their coal mining business under a written contract of employment. The defendants answered the bill, and the issues were referred to the master in chancery to take and report the evidence and his conclusions of law and fact. The master reported, and found that the defendant in error was entitled, under his contract, to a salary of $125 per month for the entire time of his employment, which had been paid to him. He further found that the defendant in error was entitled to five per cent of the net profits of the company and Brewerton for the same time, which he found to be the sum of $9834.09, and that of that amount the defendant in error had been paid the sum of $6318.96, leaving a balance due him of $3515.13. The master determined the net profits of the company for said time by deducting from the gross receipts, which he found amounted to $769,708.91, the amount of the total expenditures of the company and Brewerton for the same time, which he found to be $573,027.04, which produced the sum of $196,681.87. Both parties to the suit objected to the master's report, the defendant in error contending against an item amounting to $47,242.03 which the master had allowed as an expenditure or credit for depreciation and depletion of the capital of the company during the employment. The plaintiffs in error insisted that in ascertaining their profits they were not only entitled to have said sum

deducted from the gross receipts by the master, but that they were also entitled to a further credit of $60,440.83 for income tax paid by them during the time of employment and which the master in chancery refused to allow as a credit or deduction. The master overruled all objections, and on exceptions the court confirmed the master's report and entered a decree in favor of the defendant in error and against the company and Brewerton for $3515.13. On appeal to the Appellate Court for the Third District that court held that the company and Brewerton were not entitled to a credit of $47,242.03 for depreciation and depletion of the company's capital as an expenditure, but that they were entitled to a credit of $60,440.83 as an expense paid by the company for income taxes, and reversed the judgment of the circuit court and remanded the cause, with directions to state the account between the parties in accordance with its finding. The only questions raised in the Appellate Court were whether or not the company and Brewerton were entitled to credits for said two items in ascertaining their net profits for the time aforesaid. This court awarded to the plaintiffs in error a writ of *certiorari* for a review of the record.

On December 29, 1916, the defendant in error and Brewerton entered into a contract whereby Neeson was to take charge of the coal mine of the company as superintendent at a salary of $125 per month, plus five per cent of the net profits of the company, payable monthly, up to April 1, 1917, and ten per cent of the net profits thereafter. Subsequently, by agreement of the parties the contract was modified and five per cent was fixed as the defendant in error's share of the net profits for the entire period of the employment, which extended from December 1, 1916, to August 7, 1918. There is no dispute whatever as to the contract, and there is no dispute as to the amount of the gross receipts of the company or as to the total expenditures made by it. The sole and only questions raised on

this record are as to whether or not the plaintiffs in error are entitled to credit against gross receipts for the specified item of income tax paid by them and for depreciation and depletion of the capital stock, in determining their "net profits" as meant by the contract. The questions are properly raised by errors and cross-errors assigned.

The relationship of the parties under the contract is clearly that of employer and employee and there is no element of partnership between them. The definition of "net profits" given in *Park* v. *Grant Locomotive Works,* 40 N. J. Eq. 121, 3 Atl. 162, is in these words: "The words 'net profits' define themselves; they mean what shall remain, as clear gains of any business venture, after deducting the capital invested in the business, the expenditures incurred in its conduct, and the losses sustained in its prosecution." Other courts have adopted substantially the same definition. *City of Erie* v. *Erie Gas Co.* (Kan.) 97 Pac. 468; *Thurston* v. *Hamblin,* (Mass.) 85 N. E. 82; *Crawford* v. *Calkins,* (Mich.) 136 N. W. 369; *DiPalma* v. *Weinman,* (N. M.) 121 Pac. 38; *Stevens* v. *United States Steel Corp.* (N. J.) 59 Atl. 905.

Applying the above definition, we think it is quite clear that the depreciation and depletion of the capital should be credited to the plaintiffs in error as an expense or loss against their gross receipts, in determining the net profits of the plaintiffs in error under the contract between the parties. The depreciation and depletion of the capital must be deducted before the clear gains or net profits can be determined. They must necessarily be considered as an expense or a loss in the business. Under the contract between the parties the defendant in error was to be paid, in addition to his monthly salary of $125, "a share of the net profits," which share was to be "five per cent of same." In ascertaining net profits it is just as necessary to deduct depreciation and depletion of capital in a coal mining business as it is in any other business. It is a matter of common

knowledge that during every year a coal mining company prosecutes its business there is a depletion in capital to the amount of the value of all coal that is mined and taken from the mine, and that the equipment necessarily depreciates with age and with use and wear in the process of mining. This loss is not replaced in the further process of mining unless it be done by the purchase of other coal in place and by expenditures of money in replacing the worn equipment, and whether these losses are replaced or not,· the value of the capital of the company is reduced by the amount of such losses. The cases that are cited by the defendant in error (*Selz* v. *Buel,* 105 Ill. 122, and others,) are not in point because they are not applicable to the contract in this case, which does not provide or suggest how the net profits of the plaintiffs in error are to be determined. We therefore must take it that by the words "net profits" the parties meant net gains of the company during the time of the contract.

For the same reasons given as to the item above mentioned, we think it is also clear that the plaintiffs in error are entitled to a credit of the amount of income tax they paid, which is necessarily an expense they must incur in the prosecution of their business. No reason suggests itself to our minds for ruling that the necessary expense of an income tax should not be considered in calculating net profits or net gains in coal mining. The tax should be deducted for the same reason any other necessary expense of the business is deducted,—because it is an expense necessarily incurred which cuts down the profits or net gains of the business. It seems to us that the proposition is capable of being demonstrated to a certainty that the above items must be considered in any business in the process of calculating accurately the net profits or net gains of the business. Let us suppose that A and B are co-partners in the mercantile business and that they start their business with a stock of merchandise of the cash value of $38,000 and that

the furniture and fixtures and other such outlays for the business are of the actual cash value of $2000. At the beginning of their year's business the co-partners are worth $40,000, because they have $40,000 invested in the business measured by cash value. Now let us suppose that at the end of the year their gross expenditures for operating the business and for the purchase of merchandise to replace that sold has amounted to $150,000 and that their total receipts in cash at the end of the year amounted to $200,000, but that on examination of their stock of goods at the end of the year they find that they only have on hand goods and merchandise of the cash value of $28,500 and that their furniture and fixtures, etc., have become depreciated until they are only worth $1500 in cash. Would anybody contend that the net profits of A and B are $50,000? It would be true that they had $50,000 in money more than they started with, but they have $10,000 less in cash value of merchandise, furniture and fixtures, etc. In fact, their net worth is just $40,000 more at the end of the year than it was in the beginning, and therefore their net profits are $40,000. Suppose, again, that the co-partners had to pay in that year of business an income tax of $3000. Their net worth would under such supposition be further lowered by the amount of tax paid, and their net gain or net profit for the entire year would only be $37,000.

For the reasons aforesaid the judgments of the Appellate and the circuit courts are reversed and the cause is remanded to the circuit court, with directions to re-state the accounting between the parties in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE HEARD took no part in this decision.