## ALLIS–CHALMERS MFG. CO. v. UNITED STATES.

### No. 9336.

Circuit Court of Appeals, Seventh Circuit.
Jan. 15, 1948.

496

Timothy T. Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., and Peyton Ford, Asst. Atty. Gen., (Edward H. Hickey, Special Asst. to Atty. Gen., and Oscar H. Davis, of Washington, D. C., of counsel), for appellant.

Charles B. Quarles, of Milwaukee, Wis., and William E. Brown, of West Allis, Wis., for appellee.

Before SPARKS, MAJOR and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from a judgment entered September 25, 1946, against the defendant in an action instituted by the plaintiff under the provisions of Sec. 6 of the Contract Settlement Act of 1944, 41 U.S.C.A. § 106 (a), to recover a portion of a war contract termination claim which had been denied by the government.

Plaintiff is a Delaware corporation licensed to do business in the State of Wisconsin, and has its principal office and place of business in that State. It entered into certain subcontracts with the Cleveland Diesel Engine Division of the General Motors Corporation to manufacture various materials needed for the execution of a war contract between General Motors and the United States (acting through the War Department). Prior to plaintiff's completion of these subcontracts, the prime contract was terminated by the United States for its own convenience, and this automatically terminated plaintiff's work on its subcontracts. On September 25, 1944, plaintiff, which had entered into a great many war prime and subcontracts (all of which were subject to termination at the convenience of the government) made a written agreement with the United States providing for direct settlement by the government of all its termination claims arising under such contract and subcontracts.

In the course of the direct settlement, by negotiation of plaintiff's claim for termination of its subcontract with General Motors, the question arose whether Wisconsin income taxes should be allowed as a cost, in determining fair compensation for termination. The matter was referred to the appropriate offices of the War Department, which gave as their view that State income taxes were not an allowable cost item, and the contracting officer, who was negotiating with plaintiff, excluded such taxes in determining the fair compensation due for the termination of these subcontracts. An agreement was reached as to all other items contained in plaintiff's claims and a written settlement agreement was executed by the parties. This agreement contained the following provision: "In the determination of the expenses of the Company, allowed in this settlement, Wisconsin State Income Tax and other state income taxes based on net income were disallowed as an item of administrative expense and no allowance was made in the settlement for such taxes. It is agreed that if the appeal of the Company from the ruling that such taxes are not an allowable item of expense results in a decision favorable to the Company, an adjustment will be made whereby the Company may recover said tax expense applicable to this settlement."

Whereupon, plaintiff brought the instant action to recover the item in dispute. The contested issue involved on this appeal, as stated by both of the parties, is: "Whether the Government's refusal to treat Wisconsin income taxes (and other state income taxes having the receipt of income as their incidence) as a cost in determining the compensation due Allis-Chalmers on its termination claims is a denial of fair compensation under the Contract Settlement Act of 1944."

Sec. 6 (a) of the Contract Settlement Act provides for "speedy and fair compensation for the termination of any war contract," and Sec. 6 (b) requires each contracting agency to "establish methods and standards, suitable to the conditions of various war contractors, for determining fair compensation for the termination of war contracts on the basis of actual, standard, average, or estimated costs, * * * or on any other equitable basis, as it deems appropriate. To the extent that such methods and standards require accounting, they shall be adapted, so far as practicable, to the accounting systems used by war contractors, if consistent with recognized commercial accounting practice."

In establishing these methods and standards for determining "fair compensation," the contracting agency is by Sec. 6 (d) required "to compensate the war contractor fairly for the termination of the war contract, taking into account [among other things] (1) the direct and indirect manufacturing, selling and distribution, administrative and other costs and expenses incurred by the war contractor which are reasonably necessary for the performance of the war contract and properly allocable to the terminated portion thereof under recognized commercial accounting practices * * *."

Then follow a number of items which the contracting agency is required to take into consideration, and also a number of items which the Act provides "shall not be included as elements of cost." Neither income taxes nor any other kind of taxes are specifically mentioned either in the items to be considered or those to be excluded.

A number of regulations promulgated by the Director of Contract Settlements, designed to interpret the statutory provisions on "allowable costs," are contained in the record. We shall refer only to Termination Cost Memorandum No. 1, issued February 22, 1945, which states: "To the extent that they conform to recognized commercial accounting practices and the foregoing Statement of Principles, the established accounting practices of the contractor as indicated by his books of account and financial reports will be given due consideration in the preparation of statements of cost for the purposes of this article. * * * In general, they include all the costs necessary to conduct a business except those specifically precluded by the Statement of Cost Principles. Such costs are generally broader in scope than those ordinarily contemplated in factory cost accounting and those recognized by the Government for purposes of cost-plus-fixed-fee contracts. They include, in addition to direct and indirect factory costs, selling, distribution, administrative, financial, and general expenses incurred in the conduct of the business."

This memorandum further states, "The costs contemplated by this Statement of Principles are those sanctioned by recognized commercial accounting practices," and are intended to represent "the over-all criterion for costs applicable to terminated war contracts." It also recognizes, "There may be more than one acceptable practice with respect to the accounting treatment of individual items in a contractor's settlement proposal."

The District Court in a memorandum opinion, among other things, stated [67 F.Supp. 385, 388]:

"It is undisputed that since 1913, when the Wisconsin Income Tax Statute was enacted, plaintiff included the Wisconsin income tax as an item of costs in its estimates when establishing a selling price, and it has consistently and regularly charged it as a cost item in its manufacturing contracts and carried it since said date on its books as an item of administrative cost and expense under a recognized commercial accounting practice.

"It appears from the evidence that plaintiff's method of accounting in charging the State income taxes as an item of expense is a recognized method of accounting consistent with recognized commercial practice, which practice has been and is now followed by large manufacturers operating in Wisconsin, such as Socony Vacuum Company, J. I. Case, Briggs & Stratton, Schenley's, and United States Steel Corporation."

That the record supports this statement is hardly open to dispute.

The court made specific findings of fact, three of which, if accepted, are determinative of this appeal. Such findings are:

"Under recognized commercial accounting practices the state income taxes allocable to any manufacturing contract are chargeable thereto as proper items of administrative costs and expenses.

"Such taxes are a cost of doing business which is reasonably necessary for the performance of the sub-contracts involved in this action.

"In disallowing said taxes the said contract agency responsible for settling said termination claim acted arbitrarily and without any valid reason."

The government argues that the question for decision involves the interpretation of

a statute, and under Exmoor Country Club v. United States, 7 Cir., 119 F.2d 961, 963, these findings are not binding on this court. At the same time, the government emphasizes that the findings made by the contracting agency shall under the statute be treated as prima facie correct. See Sec. 13 (c) (3). It seems to us that these contentions are inconsistent. If the finding of the court that plaintiff's State income taxes were a cost of doing business is a legal conclusion, as the government argues, we would think that a contrary finding by the contracting agency would fall in the same category. However, we are convinced that the question presented is more legal than factual, and we shall treat it as such. Even so, we would not be justified in disturbing the judgment of the court below unless satisfied that it is erroneous.

This brings us to the question in dispute, that is whether plaintiff's State income tax was a part of its cost in performing its contract with the government. If so, plaintiff was entitled to its allowance as an element of fair compensation contemplated by the statute.

The essential weakness in the government's contention that income taxes are not costs incurred in the performance of a war contract is its failure to distinguish between the treatment which the courts have accorded such costs for the purpose of taxation and for other purposes, particularly contracts involving compensation and profits. This distinction is aptly shown by two decisions of the Supreme Court of Wisconsin, State ex rel. Stern Milling Co. v. Wisconsin Tax Commissioner, 170 Wis. 506, 175 N.W. 931, and Fleischer v. Pelton Steel Co. et al., 183 Wis. 451, 198 N.W. 444. The Stern case is strongly relied upon by the government and copiously quoted in its brief. There, the Supreme Court refused to allow Federal income taxes to be deducted, in computing the Wisconsin State income tax, as an "ordinary and necessary expense * * * in the maintenance and operation of its property." [170 Wis. 506, 175 N.W. 932] In so holding, however, the court stated, 175 N.W. 932:

"We do not overlook the fact, of course, that the business man in fixing his margin of profit must take into consideration the tax burden which he will be called upon to meet. This is true as well of many other fixed items of expense which in no sense constitute an expense of doing business. Then, too, it must be remembered that 'income' for the purpose of taxation is not necessarily identical with 'income' for other purposes; the declaring of dividends, for example. For taxation purposes, 'income' is to be determined in accordance with rules laid down by the statute, and it may well happen that the application of such rules will not establish the real net income in many instances; neither is it necessary that they should. The ultimate object to be attained is not to fix the real net income, which is left for the use and enjoyment of the producer thereof, but to arrive at a basis upon which a tax measured by his ability to pay is to be computed."

In the Fleischer case, the court was concerned with a suit by an officer of the defendant company to recover salary under a contract which provided for a percent of the net earnings, the contract having defined such earnings to mean the profits made in the operation of the business. The court held that the defendant's Federal income taxes should be deducted in order to determine its net income as a basis for calculating the plaintiff's salary. In so holding, the court stated, 198 N.W. 447: "While a tax is not in the ordinary sense a 'debt' * * * because it lacks the element of contractual obligation, it is nevertheless a liability properly chargeable as an 'operating expense.'" (Citing cases.)

The court, after pointing out that the tax liability must be discharged out of earnings and capital, continued by stating, 198 N.W. 447: "The tax levied measured the amount properly chargeable to the company for the protection it enjoyed under the government and its contribution necessary to maintain and perpetuate that government. By the very act of operating, it [became] liable for a sum which was measured by the amount of its earnings after deducting expenses. The corporation had no net earnings until this liability necessarily incident to its operation was discharged. The corporate management hav-

ing determined the basis upon which the net earnings were to be computed, and it being the usual and ordinary practice of the company to accrue and deduct its taxes in determining its net earnings, it is considered that the federal income and excess profits taxes were properly deducted as an expense incident to operation in determining the amount of the net earnings under the contract."

Another case much in point is Neeson v. The Sangamon County Mining Company, et al., 316 Ill. 397, 147 N.E. 369, which involved facts quite similar to the Fleischer case decided by the Supreme Court of Wisconsin. In the Illinois case the suit was by the superintendent of a mining company for an accounting under a contract which fixed the plaintiff's salary at a certain percent of the defendant's net profit. The question before the court was whether the defendant was entitled to deduct its Federal income tax in determining its net profit. The court, in holding that such taxes should be deducted in arriving at the company's net profit, stated, 316 Ill. at page 401, 147 N.E. at page 370: "* * * we think it is also clear that the plaintiffs in error are entitled to a credit of the amount of income tax they paid, which is necessarily an expense they must incur in the prosecution of their business. No reason suggests itself to our minds for ruling that the necessary expense of an income tax should not be considered in calculating net profits or net gains in coal mining. The tax should be deducted for the same reason any other necessary expense of the business is deducted—because it is an expense necessarily incurred which cuts down the profits or net gains of the business."

Galveston Electric Co. v. City of Galveston, et al., 258 U.S. 388, 42 S.Ct. 351, 66 L.Ed. 678, is another case where the court held that Federal income taxes were deductible from gross revenue as expenses and charges in the conduct of the business. The case involved the reasonableness of a rate of return for a utility company. In discussing the deductibility of the income tax, the court stated, 258 U.S. at page 399, 42 S.Ct. at page 356, 66 L.Ed. 678: "In calculating whether the 5-cent fare will yield a proper return, it is necessary to deduct from gross revenue the expenses and charges; and all taxes which would be payable if a fair return were earned are appropriate deductions. There is no difference in this respect between state and federal taxes or between income taxes and others."

This court, in International Hotel Co. et al. v. Libbey et al., 7 Cir., 158 F.2d 717, in construing a rental agreement which provided for a rental equal to one-third of net earnings and which defined such earnings as the amount left from gross income after deducting ordinary and necessary operating expenses, held that Federal taxes were a deductible item. In so doing, we stated, 158 F.2d at page 720: "We agree with the District Court that Federal income and excess profits taxes are properly included in 'ordinary and necessary' expenses incurred in the business. The property could not be operated successfully without the payment of such taxes. They are as much an ordinary and necessary expense as the property tax. They are a burden of operating the property. Such taxes are to be expected in the regular course of business. Therefore, they are ordinary. If the operation incurs the taxes, they must be paid to continue the operation and are a necessary expense."

■ Both from the language of the Act and from the regulations heretofore set forth, it appears that a contractor's cost to be included in fair compensation was intended to be broadly and liberally construed. As shown in Memorandum No. 1, issued February 22, 1945, the established accounting practices of a contractor as indicated by his books were to be given due consideration, and all costs were to be included which were necessary to the conduct of a business, "except those specifically precluded by the Statement of Cost Principles." As already noted, income taxes were nowhere specifically precluded. In fact, we think it was intended to include all legitimate costs and expenses incurred in the conduct of a business.

We reach the conclusion that the question involved has been correctly decided. The judgment is, therefore, affirmed.