LOUIS LOWENSTEIN, Appellant, v. BECKTOLD COMPANY, a Corporation, Respondent, No. 42478—246 S. W. (2d) 780.

Division Two, March 10, 1952.

*Earl Susman, Herman Willer, Gerald A. Rimmel, Susman, Mayer & Willer, Joseph A. Hoskins* and *Morelock, Hoskins & King* for appellant.

*Rassieur, Lang & Yawitz, Milton Yawitz* and *Robert H. Batts* for respondent.

BOHLING, C.—Louis Lowenstein instituted this action against Becktold Company, a corporation, for a declaratory judgment to determine the interpretation of the term "net profits" in a lease which, after providing for a base rental, provided for an additional yearly rental of 15% of the amount by which net profits exceeded $15,000. Plaintiff, in his petition, sought a declaration that the additional yearly rental should be paid upon the net profits ("net operating profits") of defendant without the deduction of income taxes; claimed a balance of $35,288.84 was due plaintiff from defendant for the years 1944-1949, inclusive; and asked a determination of the amount due plaintiff and a judgment against defendant therefor, and for other proper relief. The trial court decreed "net profits" meant profits after income taxes and that defendant owed plaintiff nothing on account of additional rents through December 31, 1949, defendant having theretofore paid the same.

Plaintiff appealed and contends that as used in the lease "net profits" means profits before income taxes; or, since the lease provides for a percentage of the net profits in excess of $15,000, that only the income taxes allocable to said $15,000 are deductible, and also that the method of computation used by defendant and approved by the court results in the payment of less than 15% of the net profits as additional yearly rent.

In 1939 the Pine Investment Company, operated by Simon and Julius R. Van Raalte, father and son, owned a three-story building at 2705 Olive Street, St. Louis, Missouri, a portion of which was vacant. It was under the management of Donald E. Griffith, a real estate agent.

The Mississippi Valley Trust Company held a deed of trust on 2705 Olive as collateral security for a loan to the Pine Investment Company. The collateral note was past due, with unpaid interest, and a lessee would take the property only on condition that the deed of trust be subordinate to the lease. In the circumstances the Trust Company could not make a lease but it could stop a lease.

The quarters occupied by the defendant had been taken over by the Jefferson Memorial Riverfront Project and defendant was looking for a new location.

Julius Van Raalte came to the Trust Company about leasing a portion of the building at 2705 Olive to defendant. Eugene J. Walter, an officer of the Trust Company, handled the transaction for the Trust Company. Negotiations for a period of a month and a half or more were conducted between Mr. Griffith and Mr. Walter for the lessor, and Andrew Wunsch, President, and Charles D. Long, attorney, for the lessee.

A lease of the premises between the Pine Investment Company, Lessor, and Becktold Company, Lessee, was executed on September 30, 1939. The subordination agreements, immaterial here, were also executed. The lease provided for a term of 20 years, commencing December 1, 1939, at a yearly rental of $10,200, payable in monthly installments of $850, and for an additional rental. The provisions of the lease material here follow the provisions for the $10,200 base rental and read:

"* * * and commencing with the first day of December, 1942, and ending the thirtieth day of November, 1959, an additional yearly rental, payable within sixty days after the close of each calendar year, equivalent to fifteen percentum of the amount by which the net profits in such calendar year, as determined by the certified annual report of the certified public accountants employed by the Lessee from time to time (which determination shall be conclusive and binding on the Lessor, its successors and assigns) shall exceed $15,000.00; provided, however, that in determining such net profits the salaries paid, during any such calendar year under examination, to the present officers of the Company, or those who may be elected to succeed them, respectively, shall not be taken as a charge against earnings in so far as such salaries shall be in excess of one hundred and twenty percentum of the salaries paid as of the date of this lease to such officers respectively. The Lessee agrees that prior to sixty days after the close of the calendar year 1942 and after the close of each calendar year thereafter to and including the calendar year 1959, it will have its certified public accountants prepare and submit to the Lessor a certified copy of their report to the Lessee, containing a profit and loss statement, in which certified copy they shall certify as to the amount paid during the calendar year covered by such report to the present officers of the Company or to those elected to succeed them, respectively, together with the amount paid as of the date of this lease to such officers, or to those whom such officers succeed."

Plaintiff acquired the property in May, 1944. There was evidence to the effect that until sometime in 1948 plaintiff did not have knowledge that defendant was computing the additional yearly rental on

net profits after income taxes. The record discloses that Federal income taxes were greatly increased from 1939 to 1949. This suit was filed July 12, 1950.

The term "net profits" is not defined in the lease. While defendant says net profits is not ambiguous and the meaning of the lease is to be gathered from its four corners, defendant also states in its brief that the meaning of net profits may vary when it is used in wholly dissimilar situations. Consult 66 C. J. S. 8, Crocker v. Barteau, 212 Mo. 359, 374, 110 S. W. 1062, 1066. Furthermore, at the trial the negotiations preceding the execution of the lease were opened up, testimony was adduced by both parties on the instant issue without objection, and the trial court based the judgment and decree on the lease and the testimony. We take the record as made.

The negotiations material to the instant issue were between Mr. Walter and Mr. Long. They had a number of conferences, meeting at the Trust Company. Mr. Walter was plaintiff's witness and Mr. Long was defendant's witness. There is very little conflict in their testimony and we state the substance thereof.

Mr. Walter sought to obtain the best rental possible and was asking a base rent of 25 cents a square foot for a lease not exceeding ten years. Mr. Long communicated with his client and informed Mr. Walter that defendant would not consider more than 20 cents a square foot on a twenty year term. Mr. Walter sometime thereafter informed Mr. Long 20 cents a square foot was acceptable but that they would not lease the premises for twenty years.

Mr. Long testified he submitted to Mr. Walter and they went over defendant's annual audits for the prior years of 1934, 1935, 1936, 1937, and 1938. Mr. Walter testified that he saw these audits—"I think I saw five years; I know I saw at least three"; that is, defendant's audits for the years 1936, 1937, and 1938; that defendant would not increase its offer; that defendant's financial position "wasn't too good," its earnings averaged about $5,000 for the last three or five years, and defendant apparently could not pay any more although defendant company had made "good money"; that he considered defendant's financial condition temporary, "they would have bigger earnings"; that he proposed it would be acceptable to the Trust Company, if agreeable to Pine Investment Company, to have a fixed rental of $850 a month and, if defendant had better earnings, "we wanted to share in them and get increased rental"; and that they began to talk about this.

Mr. Long testified that he informed Mr. Walter defendant had an investment of around $175,000 and he thought defendant was entitled to a return on that of $25,000 for the $850 monthly base rent prior to paying any additional rent. Mr. Walter thought $5,000, defendant's average earnings, and not $25,000 would be the proper figure. The amount of the percentage (whether 15% or 20%) and the

salaries of defendant's officers (resulting in the clause limiting increases in their salaries allowable as an operating expense in arriving at net profits for the additional rental) were discussed.

Mr. Walter testified that he discussed with Mr. Julius Van Raalte of the Pine Investment Company the conferences he had with Mr. Long, including "the amount of the lease and this percentage."

A compromise on 15% of the net profits above $15,000 was finally agreed upon. Mr. Long drafted the papers—the lease and the subordination agreements. These correctly stated the agreements reached, according to Mr. Walter, and the lease was executed. (Thereafter, lessor and lessee entered into a supplemental lease for additional space, the lessee agreeing to pay an additional yearly base rental of $300, payable $25 monthly. This lease does not affect the instant issues.)

The annual audits of defendant submitted to Mr. Walter by Mr. Long were certified to by Vickroy-Boggiano Company, Certified Public Accountants, and showed the "Balance Sheet" and the "Income, Profit and Loss" statements of defendant as of December 31 for the years of 1934 through 1938. The "Income, Profit and Loss" statement for the year ending December 31, 1938, after setting forth various items of income and expense, concluded as follows:

"Net profit before Income Taxes . $4,623.98
"Provision for Federal and State Income Taxes 609.60

"Net Profit $4,014.38"

The other audits reflected in like manner the identical items shown above for the years 1937, 1936, and 1935; the net profit for 1937 being $9,812.23, for 1936, $6,753.60, and for 1935, $5,554.38. The audit for 1934 showed a "net loss" of $10,979.92 and, consequently, income taxes were not shown.

The testimony of Mr. Walter and Mr. Long is to the effect that they did not mention income taxes in their discussions or have any discussion whether "net profits" meant profits before or after income taxes. Mr. Walter testified: "We did talk about how much money would be left for the Becktold Company"; that "net earnings means literally that"; that "the gist of it, Judge, was how much was left. * * * That's right. How much was left that they could spend;" that "net profits" meant "keepable profit, something that belonged to the company"; that "net profits" was the last item on the audits submitted by Mr. Long and was after the deduction of Federal and State income taxes.

Mr. Long in drafting the lease used the term, "Net Profit," that was used in the audits he submitted to Mr. Walter.

The contracting parties contracted on the basis that "net profits" meant profits after income taxes. While the issues may not have been precisely the same as the instant issue, adjudicated cases contain

1096.

observations that Federal income and excess profits taxes are generally considered an operating expense of a business. Galveston El. Co. v. Galveston, 258 U. S. 388, 399, 42 S. Ct. 351, 66 L. Ed. 678; International Hotel Co. v. Libbey, 7 Cir., 158 F. 2d 717, 720[2]; Allis-Chalmers Mfg. Co. v. United States, 7 Cir., 165 F. 2d 495, 498; Ransome Concrete Machinery Co. v. Moody, 2 Cir., 282 F. 29, 36[15, 17]; Neeson v. Sangamon County Min. Co., 316 Ill. 397, 147 N. E. 369, 370[1]; Homes v. James Buckley & Co., 165 La. 874, 116 So. 218, 220. See J. E. Blank v. Lennox Land Co., 351 Mo. 932, 174 S. W. 2d 862, 869; Melvin v. Hoffman, 290 Mo. 464, 235 S. W. 107, 116[14]. We construe "net profits" as used in the lease to mean profits after income taxes.

 Plaintiff contends that the computation followed by defendant's accountant did not result in the payment of 15% of defendant's net profits as additional rent.

Torbert Vickroy, defendant's Certified Public Accountant, testified he used an algebraic formula in computing the additional rent, which resulted in charging the additional rent as well as the base rent as an operating expense item, and also the income taxes and first $15,000 net profits, before arriving at the net profits under the lease for computing the additional yearly rental. He testified:

"Q. In other words, your method of computation has reduced the additional rent by 15% of the additional rent? A. Right. * * * Q. In your computation you used income taxes on the full net profits of the company, is that not correct? A. Yes, sir * * *. Q. * * * You used income taxes on the full net profit? A. Right. Q. And you deducted those income taxes then to determine net profits after taxes? A. Right."

Mr. Long, defendant's attorney and witness, testified that the accountant was to compute the rents but was not to construe the lease. Rent is ordinarily an expense of operation, as the base rent was considered under the instant lease. However, as between the lessor and the lessee the additional yearly rent under the instant lease occupied a special status. The provision of the lease material here provided for "an additional yearly rental * * * equivalent to fifteen percentum of the amount by which the net profits in such calendar year * * * shall exceed $15,000 * * *." The parties did not contemplate that the landlord was to forego a part of the tenant's additional rent. The method used treated the additional rent as a factor in the calculation of its amount. It was actually paid in the calendar year following its accrual. It would not be proper under the lease, for instance, if the additional rent for a given year were $10,000 and the following year the net profits amounted to $25,000 after income taxes, to have the $10,000 additional rent of the prior year cancel out the net profits above $15,000 of the current year. Similar reasoning should apply to a calculation on an accrual

basis which reduces the rent below 15% of the net profits. Under the terms of the lease and the evidence we think the concept of the contracting parties was that the 15% additional yearly rental should be computed on the net profits of the calendar year without deducting said additional rent as an operating expense, the net profits being adjusted to conform to the lease and give consideration to income taxes, the $15,000 for defendant, and any excess in the officers' salaries. An accounting for income tax purposes involves different factors. Consult cases considering bonuses to employees based on net profits, Selz v. Buel, 105 Ill. 122, 131; Winkelman v. General Motors Corp., S. D. N. Y., 44 F. Supp. 960, 999 [28, 29]; Bookman v. R. J. Reynolds Tob. Co., 138 N. J. Eq. 312, 48 A. 2d 646, 681 [20]; Dunn v. Dunn, 302 Ky. 188, 194 S. W. 2d 372, 374 [4]; Diamond v. Davis, 62 N. Y. S. 2d 181, 193 [13]; 19 C. J. S. 197, § 804.

Plaintiff states the computation used resulted in a loss to him of $5,694.41 for the years 1944 through 1948, inclusive. We have studied the records and exhibits. There is a possibility that other adjustments should be made. We are of the opinion the cause should be remanded to the end that the additional yearly rental be computed in conformity herewith.

Other issues briefed (involving the admission and exclusion of testimony et cetera) are not determinative of plaintiff's claim. They need not be developed.

Accordingly, the judgment and decree is set aside for the purpose of computing the additional yearly rental under the lease in conformity herewith, and the cause is remanded therefor. In view of the exceptional circumstances, the costs of this appeal are assessed in equal portions against the parties. *Westhues* and *Barrett*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.