Fleischer, Appellant, vs. Pelton Steel Company and
others, Respondents.
Deuster, Appellant, vs. Pelton Steel Company and
others, Respondents.

*March 12—April 8, 1924.*

*Corporations: Powers: Control by officers: Interference by court:
Bonus to employee based on net earnings: How computed:
Deduction of federal income and excess profits tax.*

1. Corporations are the creatures of the state and exist with such
powers, and such powers only, as are conferred by the laws
of the state which creates them.   p. 455.
2. Under the Wisconsin statute vesting the management of cor-
porations in their boards of directors except as limited by
other statutory provisions, the articles of incorporation, or
by action of the stockholders, the directors exercise full
power to choose officers, determine policies, and with the offi-
cers determine the scope of corporate activities.   p. 455.
3. Courts of equity will not interfere with the exercise of the
managerial power lodged in the board of directors unless the
corporate officers abuse their power or exercise it for an
unlawful or ulterior purpose injurious to the corporation or
to the interests of the stockholders.   p. 455.
4. Where a corporation had been accustomed to set up on its
books, on an accrual basis, an item to cover its state and fed-
eral taxes, the directors having voted a bonus to an officer of
two and one-half per cent. of the "net earnings," and, before
informing such officer, having set up on the corporate books
the proposed basis for determining net earnings, did not, in
computing such bonus, abuse their discretion in deducting
federal taxes from such earnings.   p. 456.
5. Although the resolution adopted by the board of directors
granting a bonus to a manager of two and one-half per cent.
of "net earnings" specified as deductible, in determining such
earnings, incidental operating expenses, six per cent. on the
capital employed, and depreciation, it is *held* that the rule
*"Expressio unius est exclusio alterius"* did not preclude the
deduction of federal taxes, with which the manager must
have been familiar or should have been, in the absence of any
withholding of such information contained in the books,
since the specified items did not include fixed charges, *i. e.*
wages, insurance, etc., but only items upon which dispute
might occur.   p. 457.

6. In calculating the net earnings of the corporation to determine plaintiff's bonus as manager, real-estate taxes being deductible, there is no basis for not deducting income and excess profits taxes, since the nature of the liability is the same. p. 458.

7. While a tax is not in the ordinary sense a "debt" because it lacks the essential element of contractual obligation, it is a liability properly chargeable as an "operating expense." p. 458.

APPEALS from two judgments of the circuit court for Milwaukee county: JAMES WICKHAM, Judge. *Affirmed.*

These are actions to recover upon bonus contracts. The question involved is substantially the same in each case. We shall therefore state the facts in relation to the claim of *Fleischer* and only so far as is necessary to present the question upon which the decision rests.

*Fleischer* was assistant manager of the defendant company from January 1, 1917, to December 31, 1921. In December, 1916, the board of directors adopted the following motion:

"On motion of Fred Vogel, Jr., duly seconded, it was unanimously voted that as additional compensation T. H. Harvey was to receive 5 per cent.; S. C. Johnson, 2½ per cent.; *M. R. Fleischer*, 2½ per cent. of the net earnings of the business during the year 1917. The net earnings are understood to mean the profits made in the operation of the crucible plant during the year 1917 after (1) all expenses incident to operation of said plant have been paid; (2) 6 per cent. on the capital employed has been set aside; (3) depreciation of 10 per cent. on fixtures, equipment, small tools; and (4) 6 per cent. depreciation on buildings has been set aside."

On January 23, 1917, a more formal resolution was adopted, but did not change the motion of December, 1916, as to the basis to be adopted for computing the net earnings. At the directors' meeting of February 16, 1918, another resolution was adopted in regard to the method of computing the net earnings, but its provisions are not in ques-

tion and need not be considered here. Mr. Harvey was instructed to advise *Fleischer* as to the action of the board. *Fleischer* thereupon requested that the proposition made be placed in writing and thereupon the following letter was prepared and signed:

"*Mr. M. R. Fleischer,*　　　　　　　　January 15, 1917.
　　　"Milwaukee, Wisconsin.
　　　"Dear Sir: Confirming recent verbal agreement made with you by the general manager of this company, you are hereby employed under the direction of the general manager at a monthly salary of one hundred twenty-five dollars ($125) commencing January 1, 1917.

　　　"It is also understood that as additional compensation you are to receive, at the end of the year, two and one-half per cent. ($2\frac{1}{2}$ %) of the net earnings of the crucible plant for the year 1917.

　　　"If your employment terminates before the end of the year, you are to receive two and one-half per cent. ($2\frac{1}{2}$ %) of the net earnings up to the time of such termination.
　　　"Very truly yours,
　　　　　　　　　"PELTON STEEL COMPANY,
　　　　　　　　　　"G. A. REUSS, President."

Some controversy arose as to whether or not federal taxes were to be included under the heading "all expenses incident to the operation of said plant have been paid," but it was not until the meeting of January 17, 1920, that any reference was made in the minutes of the meeting of the board of directors to federal or state taxes. However, the controversy having arisen, the following agreement was prepared and signed by the defendant *Pelton Steel Company* and *Fleischer:*

"*Mr. M. R. Fleischer,*　　　　　　　　March 26, 1919.
　　　"Milwaukee, Wisconsin.
　　　"Dear Sir: Referring to the recent discussion regarding contingent salaries, we understand that you accept the views of the board of directors of this company that all taxes (federal, state, county, and municipal, including income, war profits, and excess profits) are construed to be deductible

from profits made during the years 1917, 1918, 1919, etc., before contingent salaries are figured, *i. e.* each year to have charged to it all taxes, as above enumerated, accruing during that year, or. based on that year's income.

"Very truly yours,
"PELTON STEEL COMPANY,
"WM. H. SCHUCHARDT,
"Vice-President and General Manager.
"Accepted in full settlement.
"*M. R. Fleischer.*"

The parties having been unable to agree, these suits were brought to enable them to recover—*Fleischer* two and one-half per cent. of the net earnings for the years 1917 and 1918, and *Deuster* one per cent. of the net earnings for the year 1918, all other matters having been settled either before suit was begun or by stipulation during the course of the litigation.

The materiality of the questions involved is indicated by the fact that the income for 1917, before deduction of taxes and contingent salaries, was $146,869.80, and the federal income taxes for that year were $70,079.58; for the year 1918 the first item was $339,257.90, and the federal income taxes for that year were $238,253.12.

Certain aspects of the case were submitted to the jury upon a special verdict. In the view which we take of the case, however, it will not be necessary to set out or consider the special verdict.

The circuit court was of the opinion that the federal taxes referred to should be deducted before computation of the amounts due the plaintiffs was made. Judgments were entered accordingly, and from those judgments the plaintiffs appeal.

For the appellants there were briefs by *Glicksman, Gold & Corrigan* of Milwaukee, and oral argument by *Walter D. Corrigan.*

For the respondents there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Louis Quarles, Charles B. Quarles,* and *James Quarles.*

ROSENBERRY, J.   At the outset it is not improper to say .
that we have been materially aided in the consideration of
this case by the thorough and, careful manner in which it '
was presented as well as the accurate synopsis or outline of,
arguments and the table of cases we find in the briefs of
counsel.' Counsel upon both sides have made a conscientious
effort to narrow the issues to the main questions involved
by stipulations as to the less important and practically con-
ceded issues.   This course cannot be pursued in every case,
but where it can be it is very helpful and is to be commended.

The question presented here is, Were the federal income
and excess profits taxes properly deductible as an expense
incident to the operation of the plant in order to determine
the amount of its net earnings?   In assigning the reasons
for the determination which we have reached, we shall first
call attention to some fundamental principles of law.   Cor-
porations are the creature of the state and exist with such
powers, and such powers only, as the laws of the state of
their creation confer upon them.   Under the law of this
state (sec. 180.13, Stats.), the management of the corpora-
tion is lodged with the directors by virtue of the following
statutory declaration:        .                     '

"The stock, property, affairs and business of every such
stock corporation shall be under the care of and be managed
by a board of directors, who shall be chosen annually by the
stockholders.· . . ."

Except as these very broad powers are limited by other
provisions of the statute, by provisions contained in the
articles of incorporation, or by action of the stockholders,
they are enjoyed to their full extent by the board of directors.
Under our law the directors choose the officers, determine
the corporate policies, and with the corporate officers de-
termine the scope of corporate activities.   The courts will
not interfere with the exercise of this managerial power
when it is exercised honestly and with discretion.   It is not
until the power lodged with the corporate officers is abused

or exercised for some unlawful or ulterior purpose, injurious to the corporation or the interests of the stockholders, that the aid of a court of equity may be successfully invoked to control it. *Morey v. Fish Bros. W. Co.* 108 Wis. 520, 84 N. W. 862; *Theis v. Durr,* 125 Wis. 651, 659, 104 N. W. 985; *Gilchrist v. Highfield,* 140 Wis. 476, 123 N. W. 102; *Estate of Wells,* 156 Wis. 294, 144 N. W. 174.

The question is not to be determined wholly upon a legalistic argument as to the meaning of the words "net earnings." As was shown conclusively by counsel for plaintiffs, net earnings may mean one thing in one connection and a different thing in another connection. They may receive one interpretation for purposes of taxation, another for dividend purposes, and still another when used in a contract. Here the parties were contracting with reference to the net earnings of a department of a specified corporation. It is certainly within the province of corporate management, in the absence of fraud or abuse of discretion, to fix the basis upon which the net earnings of the corporation are to be determined. Perhaps no function of the management of a corporation requires greater powers of discretion or more wisdom than the doing of that very thing. Many corporations have found themselves insolvent because their management has failed in that particular. It appears quite conclusively that the defendant corporation had been accustomed to set up on its books on an accrual basis an item to cover its taxes, state and federal. This accrual account was covered into surplus, and when the exact amount of the taxes was ascertained the amount was paid out of surplus. There is no contention that the management acted with any fraudulent purpose or ulterior motive, and, as shown by the statement of facts, before communicating the proposition to the plaintiffs the board of directors set up on the corporate books the basis upon which it was proposed the net earnings should be determined.

It is argued by the plaintiff that having set out some things which were to be deducted from gross earnings and

not having included taxes among these items, they are there-fore, under the rule *"Expressio unius est exclusio alterius,"* excluded. This rule of construction we think has no appli-cation. A careful perusal of the resolution shows that those items which constituted the fixed charges of the cor-poration were not set forth. The resolution does not men-tion wages, insurance, interest, rent, or taxes. The only items specifically mentioned are those as·to which there might be a difference of opinion. These are principally the rates of depreciation to be charged on fixtures, equipment, tools, and buildings, and the rate of return to be set aside on capital employed. These items were not fixed but were matters of opinion and judgment. At the beginning of the year, before any rights had accrued, these items, ·which might be matters of dispute, were settled.

In the instant case the taxes were set up on an accrual basis on the books of the company, with which the plaintiffs, one assistant manager and the other bookkeeper, must have been familiar, and if they were not familiar it was their duty to familiarize themselves with the basis upon which the net earnings of the company were computed, because it was with reference to those net earnings that they con-tracted. There is no showing that there was any withhold-ing from either of the plaintiffs of any information which they sought in regard to the basis upon which net earnings were computed. No doubt the plaintiffs, as well as the com-pany, considered the percentage which they were awarded upon the net earnings to be in the nature of a gratuity whatever its legal status might be; hence plaintiffs may not have scrutinized the matter so closely as they would have scrutinized an ordinary salary contract; but it was their duty to do so. Neither the plaintiffs nor the defendant knew or had any means of knowing at the time the contract was entered into what the amount of taxes would be or at what rate they were to be computed. Both parties, however, knew that, under the resolutions and the previous practice of the company, the company was accustomed to set up its

taxes on an accrual basis. The fact that the rate of taxa-
tion as finally fixed by statute was very much higher than
either party contemplated cannot affect the situation.

Our attention is called to a decision of the federal court
for the Eastern district of Wisconsin in the case of *Baten-
burg v. Four Wheel Drive Auto Co.* (not yet reported) and
to the case of *Stanley v. Leary,* 120 Misc. 808, 199 N. Y.
Supp. 617. The *Batenburg Case* and the *Stanley Case* go
upon the theory that because under governmental regula-
tions, so called, contingent salaries or bonus payments may
be deducted from the earnings before the federal income
tax is computed, that fact is determinative of the question.
It was conceded in the *Batenburg Case* that real-estate taxes
might be deducted. We perceive no basis upon which it
may properly be said that real-estate taxes may be deducted
and income and excess profits taxes may not be deducted.
The nature of the liability is the same in each case. In the
*Stanley Case* the contract was made long prior to the enact-
ment of the internal revenue law under which the income
and excess profits taxes are levied, and the case goes wholly
upon the theory that, because under the regulation of the
internal revenue department the partnership was authorized
to deduct contingent salaries, the term "net profits" of the
business meant the amount of the earnings before the de-
duction of federal taxes. The reasoning in this case is to
our minds not at all persuasive. The mere fact that the
amount of the contingent salary item must be estimated or
approximated in order to determine the base upon which
the income and excess profits taxes are to be computed, does
not affect one way or the other the character of the tax
levied as a proper operating charge. If salaries and taxes
are proper charges against operation, they remain so without
regard to accounting methods. Both items were set up on
the books of the company on an accrual basis.

While a tax is not in the ordinary sense a debt (*State v.
Railway Cos.* 128 Wis. 449, 108 N. W. 594) because it lacks
the element of contractual obligation, it is nevertheless a

liability properly chargeable as an operating expense. *Willcox v. Consolidated Gas Co.* 212 U. S. 19, 29 Sup. Ct. 192; *People ex rel. Jamaica W. S. Co. v. State Board of Tax Comm'rs,* 196 N. Y. 39, 89 N. E. 581.

The tax being a liability, it must be discharged by the company against which it is assessed. The company has no means of discharging it except out of its earnings or capital. We think it would not be claimed for a moment that a corporation was entitled to declare a dividend without regard to its taxes. A set of accounts which in no way reflects the company's liability with respect to taxes certainly does not exhibit a correct statement as to its financial situation. The tax levied measured the amount properly chargeable to the company for the protection it enjoyed under the government and its contribution necessary to maintain and perpetuate that government. By the very act of operating it became liable for a sum which was measured by the amount of its earnings after deducting expenses. The corporation had no net earnings until this liability, necessarily incident to its operation, was discharged. The corporate management having determined the basis upon which the net earnings were to be computed and it being the usual and ordinary practice of the company to accrue and deduct its taxes in determining its net earnings, it is considered that the federal income and excess profits taxes were properly deducted as an expense incident to operation in determining the amount of the net earnings under the contract. It has been so held. *Patent Castings Syndicate, Ltd. v. Etherington,* L. R. [1919] 1 Ch. 306; *Galveston E. Co. v. Galveston,* 258 U. S. 388, 42 Sup. Ct. 351; *Ransom C. M. Co. v. Moody,* 282 Fed. 29. See, also, *State ex rel. Stern M. Co. v. Tax Comm.* 170 Wis. 506, 175 N. W. 931.

In the view which we take of the case it is not necessary for us to consider the effect of the letter dated March 26, 1919.

*By the Court.*—Judgment in each case is affirmed. Clerk's fees and one bill of costs to be taxed.