**Frederick I. RICHMAN, Appellant,**

v.

**Lyda TIDWELL, Roy E. Hallberg, as Receiver of all the real and personal property constituting the former Richman Trust, and John Whyte, attorney for Receiver, Appellees.**

**Lyda TIDWELL, Appellant,**

v.

**Frederick I. RICHMAN, Roy E. Hallberg, as Receiver of all the real and personal property constituting the former Richman Trust, and John Whyte, attorney for Receiver, Appellees.**

No. 14702.

United States Court of Appeals
Ninth Circuit.

June 7, 1956.

Joseph T. Enright, Brady, Nossaman & Walker, Los Angeles, Cal., for appellant.

Martin, Hahn & Camusi, Los Angeles, Cal., for appellee and cross-appellant, Lyda Tidwell.

John Whyte, Fitzpatrick & Whyte, Los Angeles, Cal., for appellee Roy E. Hallberg.

John Whyte, Los Angeles, Cal., in pro. per.

Before FEE and CHAMBERS, Circuit Judges, and FOLEY, District Judge.

FOLEY, District Judge.

Lyda Tidwell, a citizen of New Mexico, brought an action against Frederick I. Richman, a citizen of the State of California; she sought termination of a trust and the appointment of a receiver.

On January 21, 1954, the Court entered its judgment providing, inter alia, that the said trust, dated November 1, 1945, and two amendments thereto, are void and canceled, and that a receiver be appointed to hold all of the assets pending an accounting and determination of the respective interests of the parties. The parties endeavored to settle remaining issues by acceptance of proposals contained in a letter of Richman's counsel dated February 19, 1954. The accepted proposals which are pertinent here are the following:

"1. Both parties mutually release each other of any and all claims known or unknown, that they have against the other from the beginning of the world to the present time.

"2. Both parties shall bear their own expenses.

"3. * * *

"4. A stipulation shall be entered into that the receiver be relieved as of February 28, 1954, and whoever buys shall be entitled to all receipts and shall assume all operating obligations of the Richman Trust from March 1, 1954 * * *.

"5. The receiver shall file his report and after the payment and/or provision for all of the receiver's claims and expenses and operating obligations of Richman Trust to February 28, 1954, any funds remaining shall be divided equally between Mrs. Tidwell and Mr. Richman.

"6. Richman Trust shall be terminated and the property therein and now being controlled by the receiver distributed in equal shares as undivided interests to Mrs. Tidwell and Mr. Richman.

"7. Mrs. Tidwell shall have her election to either buy Mr. Richman's undivided half interest in the assets of Richman Trust, or to sell her undivided one-half interest in the assets of Richman Trust for the sum of $600,000.00, payable on the following basis:

"(a) $100,000.00 cash shall be paid February 26, 1954 by the party buying to the other upon the notification by Mrs. Tidwell as to her determination of whether she is buying or selling the undivided interest of the assets in Richman Trust.

"(b) $500,000.00 shall be paid through escrow to the party selling on or before May 1, 1954.

"(c) In the event the $500,000.00 is not paid through escrow on or before May 1, 1954, then a receiver may be reinstated to operate the assets of Richman Trust and the $100,-000.00 paid upon Mrs. Tidwell's election shall be forfeited and all items hereinabove enumerated, except the forfeiture of the $100,000.00 and retention of operating income as provided in 4 hereof, shall be of no force and effect, and the parties shall be in the same position as they now are except for the forfeiture of the $100,000.00 and retention of operating income."

The stipulation entered into in compliance with accepted proposal No. 4 provided:

" * * * Whereas Lyda Tidwell, plaintiff, under said agreement, is to purchase all of defendant, Frederick I. Richman's share in the assets referred to in this trial as the 'Richman Trust', and hereinafter referred to as the Richman Trust, and Lyda Tidwell already having paid to said Frederick I. Richman the sum of One Hundred Thousand Dollars ($100,000.00) in pursuance of the terms of the above said agreement, and the parties hereto desiring also, in accordance with the terms of said agreement, that the Receiver be relieved of his responsibilities in connection with the management, control and possession of the assets of the said Richman Trust, with the exception of money in bank and now under the control of the Receiver;

"Now, Therefore, It Is Hereby Stipulated by and between counsel for plaintiff, Lyda Tidwell, and defendant, Frederick I. Richman, that the Receiver, Roy E. Hallberg, be relieved of the possession, control and management of the assets of the said Richman Trust, excepting funds in bank and under the control of said Receiver, as of five o'clock Sunday, February 28, 1954, and that plaintiff, Lyda Tidwell, be given possession, control and management of all the assets of the Richman Trust with the exception of money in bank, as above stated, * * * and that the court make an order for the purpose of carrying this Stipulation into effect."

The Order intending to carry the stipulation into effect was made February 26, 1954.

On March 3, 1954, plaintiff filed a dismissal of the action and on March 22,

1954, the Court entered the following Order:

> "It is so ordered except that jurisdiction is retained over all monies, credits and assets in possession or under control of Roy E. Hallberg, receiver heretofore appointed herein, and over said receiver and to fix his compensation and allow his expenses including fee for his attorney."

Order in re settlement of receiver's account, fees and distribution of funds in hands of receiver was made and entered November 19, 1954.

Frederick I. Richman appeals from said Order and Judgment in re settlement of receiver's account. Lyda Tidwell appeals from that portion of said Order in re settlement of receiver's account which awards the sum of $4,974.56, or any part thereof, to Frederick I. Richman and which limits the distribution to Lyda Tidwell to the sum of $7,833.95.

Lyda Tidwell and Frederick I. Richman will be hereinafter referred to as plaintiff and defendant.

■ There is no merit in defendant's first contention that the Trial Court lacked jurisdiction to settle all disputes between Richman and Tidwell as to the distribution of funds remaining in the receiver's hands. Defendant's suggestion in his Objections and Answer to Report of Receiver that each of the parties is entitled to apply to a court of competent jurisdiction for determination of their respective rights under the settlement agreement is frivolous. In Pacific Bank v. Madera Fruit & Land Co., 124 Cal. 525, 57 P. 462, after dismissal of the case, plaintiff moved to dismiss the account and petition of a receiver on the ground that by the judgment of dismissal the Court had lost jurisdiction to settle the accounts of the receiver. The Trial Court overruled the motion and plaintiff appealed. There the Court, quoting from Beach on Receivers, stated:

> "'The end of the suit, its final adjudication, gives cause for the discharge of the receiver, but does not,

ipso facto, effect his discharge, which results only from an order or decree of court so directing. After the settlement of the suit the receiver must have time and opportunity to prepare and present his accounts, and for the adjustment of the details of the receivership. * * * The dismissal of the action does not discharge the receiver from accountability to the court which appointed him. He is an officer of the court, and subject to its orders in relation to the property placed in his hands as receiver until discharged by the court.'"

The Supreme Court of the United States in Atlantic Trust Co. v. Chapman, 208 U.S. 360, 370, 28 S.Ct. 406, 408, 52 L.Ed. 528, 533, upon writ of certiorari from this Court, speaking through Mr. Justice Harlan, said:

> "* * * Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer or creature, the receiver."

■ We wish to observe here that there is no merit in the defendant's contentions as to disqualification of the Trial Court, defendant's attack on receiver's qualifications, value of his services, or value of the services of the attorney for the receiver. The receiver was clearly entitled to credit in the sum of $89.20 for his expenses incurred in the taking of depositions. In the Order of settling account, the Court found that the receiver, at the time of the entry of the Order, had in his possession $20,697.71 and was entitled to the following credits:

$6,000.00 receiver's fee
1,800.00 fees of attorney for receiver
89.20 expenses of deposition incurred by receiver.

Thus there remained the sum of $12,808.-51 to be distributed between plaintiff and defendant as their interests appeared.

■ The Court correctly interpreted the agreement of the parties and their stipulation in holding that defendant Richman was not entitled to any of the following:

The petty cash fund of $785.00 and rentals totalling $1,290.59.

The disputed rental item of $1,290.59 represents rentals collected by the managers of the apartments on February 26, 27 and 28, 1954. Neither the petty cash fund nor the above item of rents were included in "funds in bank" and were properly considered as among assets purchased by plaintiff.

■ Defendant complains that the Court erred in failing to charge the plaintiff's interest in the balance of the funds in the amount of $2,027.28 being a sum of money paid by the receiver on account of an obligation assumed and required to be paid by plaintiff in accordance with the settlement agreement made by plaintiff and defendant terminating the receivership and settling their dispute. This item of $2,027.28, being a payment made by the receiver on February 27, 1954, of an installment payment upon a note secured by a deed of trust on property of the Richman Trust, if not among the obligations assumed by plaintiff by virtue of accepted proposal No. 4, was an obligation necessary to be paid if the plaintiff was to continue in the enjoyment of the real property affected thereby. After the sale of his interest, defendant Richman could not be expected or required to make any payment on an existing encumbrance and the obligation secured by the deed of trust, for all purposes here, should be treated as an encumbrance. 25 Cal.Jur. 12, § 4, Trust Deeds.

■■ Defendant Richman complains that the Court erred in its Order in re settlement of receiver's account by granting the plaintiff a credit in the amount of $2,476.38, being one-half the real property taxes which were paid by the plaintiff, when prorating the balance of the funds remaining in the possession of the receiver between the plaintiff and defendant. Among other items, plaintiff Tidwell paid out of her own funds the real property taxes for the first six months of 1954. She contends that she should be reimbursed by a proration of such taxes to the end that the burden of paying the taxes for the first six months of 1954 should be distributed proportionately, that is, that an apportionment be made for the first two months of 1954. Accepted proposal No. 4, binds her to assume all operating obligations from March 1, 1954, but she did not agree to and was not bound to assume payment of any operating obligation which may be considered as having accrued prior to March 1, 1954. In Fleischer v. Pelton Steel Co., 183 Wis. 451, 198 N.W. 444, 447, the Supreme Court of Wisconsin held:

"While a tax is not in the ordinary sense a 'debt' * * * because it lacks the element of contractual obligation, it is nevertheless a liability properly chargeable as an 'operating expense.' [Citing cases.]"

Therefore, the defendant's interest in the balance of the funds should be charged in the amount of $2,476.38, being one-half of the taxes so paid by plaintiff Tidwell and her interest credited therewith.

■ While the plaintiff is entitled to be reimbursed for one-half of the February utility bills paid by her after assuming possession of the apartment houses on February 28, 1954, the record does not disclose any stipulation or evidence which would support a finding that the amount so paid equalled $1,877.50. On remand to the District Court the amount of the utility bills paid by plaintiff for the month of February, 1954, should be resolved by the parties or by further hearing. After determination of the correct amount paid by plaintiff, the defendant's interest in the balance of the funds should be charged with one-half thereof and plaintiff's interest should be credited with one-half thereof.

■ We agree that the Court erred "by granting the plaintiff a credit in the amount of $1,300.00, being one-half the

cost of catalytic units paid for by plaintiff, when prorating the balance of the funds remaining in the possession of the receiver between the plaintiff and the defendant." The catalytic units were contracted for before the receiver was appointed and the contracts of purchase provided that the balance of the purchase price was payable upon receipt of Los Angeles County Air Pollution Control District's permits to operate which were issued March 9 and June 2, 1954. This balance in the sum of $2,600.00 was paid by plaintiff. She assumed, by accepted proposal No. 4, to pay all the operating obligations of the Richman Trust which became due from March 1, 1954, without regard to when same were contracted.

■ In the Order settling the account, the Court decided that Richman was entitled to a reasonable fee for services rendered by him as agent for the dissolved Trust, which fee is fixed at 6% of the gross revenues for the month of November, 1953, which revenues aggregated $31,043.33, or a fee of $1,862.60, one-half of which was the obligation of plaintiff. The letter containing defendant's proposals, in a preliminary paragraph, recited:

"* * * Any agreement made contemplates a full release of any and all claims that either Mr. Richman or Mrs. Tidwell have or think they have against the other from the beginning of the world to the present time. If this matter is going to be terminated, it is my desire to have it terminated completely and not by use of trick terminology which might subject it to other law suits in the future."

This purpose of defendant was accomplished by accepted proposal No. 1. The claim of defendant against plaintiff for services and expenses occasioned by defendant's management of the Trust up to the time of the appointment of the receiver should be considered in the light of all the accepted proposals and the announced purpose of defendant Richman in making the same. The contention of

Richman that his claim for November services prior to receivership was a claim against the Trust, not against plaintiff, is, in view of the agreement of the parties, a mere play upon words. It is contrary to his expressed desire and the purpose of both parties that all controversies be terminated by the settlement. No mention of such an item is to be found in the accepted proposals.

In its Memorandum Decision of November 30, 1953, the Court, in the opening paragraph of said Decision, stated [127 F.Supp. 527]:

"Plaintiff has brought suit asking this Court to permit her to void the declaration of trust and for a distribution of the assets of the estate to the trustors. She claims that the trust is a voidable one because of (1) undue influence in the inception; (2) fraud in the inception; (3) fraudulent and improper management; and (4) that after the establishment of the trust it has been fraudulently and wrongfully managed by the defendant to such an extent that he should be removed as agent of the trustees and the trust should be terminated."

Near the conclusion of said Memorandum, the Court declared:

"The declaration of trust was, and is, voidable; and as plaintiff has sued to set it aside for the foregoing reasons, the Court holds that she has established her case, and the corpus of the trust shall be distributed according to the interests of the trustors. All questions and matters, except that the trust be set aside and the corpus distributed, are expressly reserved to be treated in further proceedings here in the administration of a distributing receivership which will be ordered concurrently with this memorandum."

The Memorandum Decision of November 30, 1953, exhibits the state of the litigation at the time of the occurrence of the following events: The receiver Hallberg was appointed the same day and then

followed, about February 25, 1954, the settlement by the parties of the remaining issues.

From the foregoing it will be thus noted that in entering into the settlement, plaintiff Tidwell abandoned claims which, without the settlement, she could have and undoubtedly would have pursued against the defendant. It would be inequitable to allow Richman to assert a claim which by proposal No. 1 he agreed to abandon by the use of what he himself termed "trick terminology" which he sought to protect himself against in his letter of proposals for settlement by the language: "If this matter is going to be terminated, it is my desire to have it terminated completely and not by use of trick terminology which might subject it to other law suits in the future."

Therefore, that part of the Order settling the receiver's account allowing defendant Richman a credit for services rendered by him as agent for the dissolved Trust is erroneous, and he is not entitled to credit in any amount for such services.

In the Order in re settlement of receiver's account the Court held that "plaintiff is not entitled to any credits for expenses incurred by her in said escrow on behalf of defendant Richman as the seller therein." In the escrow instructions of February 26, 1954, plaintiff Tidwell, in addition to other matters, stated:

"I will also hand to you for delivery to F. I. Richman at close of escrow a full and complete and general release in favor of F. I. Richman and all other parties named as Defendants in the above entitled United States District Court Action when you can hold for me a full and complete release in my favor executed by said Defendants. * * * Notwithstanding the printed provision in these instructions I agree to pay, in addition to the buyer's costs and expenses in this escrow all of the seller's costs and expenses of this escrow and the cost of the policy of title insurance, revenue stamps and recording and filing all instruments and documents and the seller's escrow fee.

"These instructions are not intended to and do not amend, alter, modify or supersede any agreements outside of escrow between F. I. Richman and me and with which agreement California Bank is not to be concerned."

These items were paid by her. She argues that at the time of the execution of the escrow instructions defendant Richman insisted that the escrow instructions provide that plaintiff pay the seller's as well as the buyer's escrow fees and that the buyer Tidwell pay for the Internal Revenue stamps to be placed on the deed of conveyance, and explains her reason for agreeing to make such payments by her statement: "The escrow company is hardly the place to argue such points." If defendant Richman, at the time of formulating the escrow instructions, insisted that plaintiff pay for the Internal Revenue stamps and all the escrow costs, he, to that extent, repudiated his agreement. Rather than pursue any remedy she might have to enforce the agreement, she waived her right to any credits for such payments by stating in the escrow instructions that she would pay the same.

At this point it might be well to refer to an argument of Richman having to do with the rent and tax items considered above. Referring to escrow instructions he says that when plaintiff Tidwell and her attorneys signed the instructions which specifically provided that there would be no proration of taxes, the escrow instructions contained the provision:

" 'The following adjustments only are required in this escrow.'

"No adjustment or prorations were provided for. Specifically blank spaces were provided for the insertion of the date for prorating taxes and rents and the word 'none' was inserted."

368

These statements in the escrow instructions were what they purported to be, merely instructions to the bank affecting distribution of funds which might come into its possession through the escrow and in no way affected the agreement of the parties to this litigation.

A $158.00 compensation insurance refund item was also a subject of controversy. Defendant Richman testified that the item was now shown in the receiver's report and that he did not know whether it had been refunded. Obviously such refund, if made, was an asset of the Trust and is to be considered as included within the one-half interest sold by defendant to plaintiff.

The Order and Judgment in re settlement of receiver's account is modified as hereinabove indicated. The matter is remanded to the District Court to take such further action as may be advised not inconsistent with this Opinion.

The costs of this appeal, including costs of the transcript, shall be borne equally by appellant and cross-appellant.