[Civ. No. 7281.   Fourth Dist.   May 13, 1964.]

JOSEPH ELLIS et al., Plaintiffs and Appellants, v. TITLE INSURANCE AND TRUST COMPANY, Defendant and Respondent.

John George Ronis for Plaintiffs and Appellants.

McInnis, Focht & Fitzgerald and James L. Focht, Jr., for Defendant and Respondent.

COUGHLIN, J.—The plaintiffs respectively leased from the defendant, by an agreement in writing, certain premises that were part of a shopping center serviced by adjoining parking areas; by their leases, agreed to pay a "proportionate share of all the costs and expenses of maintaining and operating the parking areas ...''; brought this action in declaratory relief to determine whether they were liable for a proportionate share of the real estate taxes levied against the parking areas; and appeal from the judgment declaring they were liable therefor.

The plaintiffs contend that the determination of the trial court is erroneous because it is contrary to the general rule that, ordinarily, where a lease is silent as to who shall pay taxes upon leased property the law imposes the obligation to do so upon the lessor. (*Los Angeles Land & Water Co.* v. *Consumers Rock & Gravel Co.*, 3 Cal.2d 77, 79 [43 P.2d 281]; *Pacific Palisades Assn.* v. *Menninger*, 219 Cal. 257, 265 [26 P.2d 303].) The defendant contends that the leases at hand are not silent upon the subject; that the obligation to pay costs and expenses of maintaining and operating the parking areas includes the obligation to pay taxes; and, for this reason, the judgment was proper.

There are many decisions holding that, under the circumstances presented by the particular case, the payment of taxes is included within the costs and expenses of maintaining and operating a particular business or property.[1] Some of these decisions have involved a consideration of the provisions of a lease requiring payment by the lessee of expenses of operation. (*City of Phoenix* v. *Tanner*, 63 Ariz. 278 [161 P.2d 923, 924]; *City of Philadelphia* v. *N. Snellenburg & Co.*, 163 Pa. Super. 507 [63 A. 2d 480, 484].)

[1] (*Powell* v. *City & County of San Francisco*, 62 Cal.App.2d 291, 298 [144 P.2d 617]; *Willcox* v. *Consolidated Gas Co.*, 212 U.S. 19 [29 S.Ct. 192, 199, 53 L.Ed. 382]; *Richman* v. *Tidwell*, 234 F.2d 361, 365; *Hardee* v. *American Security & Trust Co.*, 77 F.2d 382, 384 [64 App.D.C. 259]; *Duluth St. Ry. Co.* v. *Railroad & Warehouse Com.* 4 F.2d 543, 550; *Michigan Public Utilities Com.* v. *Michigan State Telephone Co.*, 228 Mich. 658 [200 N.W. 749, 751]; *People* ex rel. *Jamaica Water Supply Co.* v. *State Board of Tax Comrs.*, 196 N.Y. 39 [89 N.E. 581, 586]; *Fleischer* v. *Pelton Steel Co.*, 183 Wis. 151 [198 N.W. 444, 447].)

■ The issue for determination in the case at bar is whether, within the contemplation of the instant leases, the payment of taxes is an expense of maintaining and operating the subject parking areas. A formula to assist in determining this issue is supplied by other provisions in the leases wherein it is stated: "... Such operating and maintenance costs shall be computed under generally accepted accounting principles. . . . " The court found that, "under generally accepted accounting principles such real property taxes are operating costs. . . ." This finding is supported by substantial evidence and, under the formula supplied by the lease, of itself is sufficient to sustain the judgment.

■ In addition, there are other factors which also support the judgment.

When each of the subject leases is considered as a whole it appears therefrom that the parties contemplated the operation of the parking areas as a nonprofit venture, under the control of the landlord, for the benefit of both the landlord and the tenants. The former was in charge of the operation. The latter received the advantages incident to the availability of parking facilities for their customers. Among other things, the leases provided that the landlord might establish a parking charge arrangement for the purpose of encouraging the use of parking spaces by the customers of the tenants rather than for the purpose of making a profit, but in the event a profit was realized it should augment "the maintenance fund provided for hereunder," i.e., the fund to which each of the lessees contributed his share of the costs and expenses of maintaining and operating the parking and other commonly used areas. Under the cases heretofore cited, the expenses incident to such a venture would include the payment of taxes. In determining the amount of profit payable to the maintenance fund from the parking fees, it would be unreasonable to exclude the payment of taxes as an item of expense.

Ordinarily, the payment of taxes on business property is considered to be a current expense and not a capital investment. (*Alabama Power Co.* v. *Federal Power Com.*, 134 F.2d 602, 608; *Commissioner of Internal Revenue* v. *Rust's Estate*, 116 F.2d 636, 638.)

■ Taxes on real estate are a payment for governmental services. (See *Alabama Power Co.* v. *Federal Power Com.*, *supra*, 134 F.2d 602, 608.) ■ Without itemizing them, suffice to say that many of these services are of a type directly essential to the maintenance and operation of a

shopping center parking area. Furthermore, the payment of taxes upon the land used for parking purposes under the subject leases was essential to its continued use thereunder for those purposes by the parties thereto. In the event such taxes were not paid, the land would be sold under the delinquent tax provisions of the law; would not be subject to the parking privileges conferred by the lease; and the parking area operation contemplated thereby would cease. Thus, the payment of taxes, when considered as an expense incurred to obtain governmental services or essential to the continued use of the land occupied by the parking areas, properly was classified as an expense of maintaining and operating the parking areas occupying that land.

The judgment is affirmed.

Griffin, P. J., and Finley, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.