OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

| | | |
|---|---|---|
| OPINION | : | No. 90-908 |
| | : | |
| of | : | <u>JANUARY 3, 1991</u> |
| | : | |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |

---

THE HONORABLE DALE M. HANSON, CHIEF EXECUTIVE OFFICER, CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, has requested an opinion on the following question:

Would imposition of an in lieu fee for general governmental services upon the California Public Employees' Retirement System based upon its ownership of real property be constitutional?

CONCLUSION

Imposition of an in lieu fee for general governmental services upon the California Public Employees' Retirement System based upon its ownership of real property would be unconstitutional.

ANALYSIS

Article XIII, section 1 of the California Constitution provides that "[u]nless otherwise provided by the Constitution or the laws of the United States: (a) All property is taxable . . . ." Article XIII, section 3(a) of the California Constitution, however, exempts from taxation "[p]roperty owned by the state."

Despite this exemption, where the state has granted private parties the right of possession to state owned property, as for example under a lease agreement, such "possessory interest" held by the private parties is subject to property taxation. (See Rev. & Tax. Code, § 107 et seq.) The taxes which will accrue on such "possessory interests" will normally be less than the total amount of property tax which would have accrued without the constitutional exemption, because the party with the possessory interest does not have the full rights of fee simple ownership.

The California Public Employees' Retirement Law is found in section 20000 et seq. of the Government Code.[1] The California Public Employees' Retirement System (PERS) "is a unit of the State and Consumer Services Agency" of the State of California. (§ 20002.) The management and control of PERS is vested in a board of administration. (§ 20103.) All funds accruing to PERS are credited to the "Public Employees' Retirement Fund" which is a "trust fund created, and administered in accordance with . . . [the retirement law] solely for the benefit of the members and retired members of the system and their survivors and beneficiaries." (§ 20200.)

The board of administration may make any investment of retirement funds authorized by law. (§§ 20205, 20205.6.) Included in such authorized investments are investments "in real estate and leases thereof and improvements thereon for business or residential purposes as an investment for the production of income." (§ 20205.4.) It is these latter type investments which are the predicate for this opinion request. Real estate owned by PERS would be constitutionally exempt from taxation since it is "owned by the state." The possessory interests held by private parties in such property, however, would be subject to taxation, yielding taxes in a lesser amount than if the property were taxed without the constitutional exemption. To compensate local governments for the "short-fall" in taxes from property owned by state public retirement systems, the Legislature enacted section 7510. That section states:

> "A public retirement system, which has invested assets in real property and improvements thereon for business or residential purposes for the production of income, shall pay annually to the city or county, in whose jurisdiction the real property is located and has been removed from the secured roll, a fee for general governmental services equal to the difference between the amount that would have accrued as real property secured taxes and the amount of possessory interest unsecured taxes paid for that property. The governing bodies of local entities may adopt ordinances and regulations authorizing retirement systems to invest assets in real property subject to the forgoing requirements.

> "This section shall not apply to any retirement system which is established by a local governmental entity if that entity is presently authorized by statute or ordinance to invest retirement assets in real property." (Emphasis added.)

We are asked whether this "fee for general governmental services" is in truth a "property tax" which may not be imposed upon PERS under the provisions of Article XIII, section 3(a) of the California Constitution. We conclude that the fee is such a tax.

"Taxes are charges imposed by or under the authority of the Legislature, upon persons or property subject to its jurisdiction." (*People* v. *McCreery* (1868) 34 Cal. 432, 454.) "Taxes on real estate are a payment for governmental services." (*Ellis* v. *Title Ins. & Trust Co.* (1964) 227 Cal.App.2d 204, 206.) To be distinguished from taxes, however, are special assessments and other exactions made by government in the way of fees for special purposes.

"Taxes contribute to the general cost of governmental expense whereas . . . assessments imposed . . . are for the benefit of the particular property assessed." (*Northwestern Etc. Co.* v. *St. Bd. of Equal.* (1946) 73 Cal.App.2d 548, 554.) Or as stated by the court in *Solvang Mun. Improvement Dist.* v. *Board of Supervisors* (1980) 112 Cal.App.3d 545, 552-553, and quoted with approval by our Supreme Court in *San Marcos Water Dist.* v. *San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 162:

---

1. All section references will be to the Government Code unless otherwise indicated.

> "An ad valorem tax on real property describes a general tax levy which applies a given rate to the assessed valuation of all taxable property within a particular taxing district. <u>Such is the tax levied by a county to pay for general expenditures</u>, such as fire and police protection, and for general improvements, such as fire stations, police stations, and public buildings, which are deemed to benefit all property owners within the taxing district, whether or not they make use of or enjoy any direct benefit from such expenditures and improvements. . . . In contrast, a special assessment, sometimes described as a local assessment, is a charge imposed on particular real property for a local public improvement of direct benefit to that property, as for example a street improvement, lighting improvement, irrigation improvement, sewer connection, drainage improvement, or flood control improvement. . . . <u>This view makes a clear distinction between taxes, which are levied for general revenue and for general public improvements; and special assessments, which are levied for local improvements which directly benefit specific real property.</u>" (Emphasis added.)

Accordingly, the "fee for general governmental services" at issue herein is not a special assessment. It appears to meet all the attributes of an "ad valorem tax on real property" except for its appellation, since it is exacted for the general expenses of local governments.

Does the fact that the in lieu fee exacted pursuant to section 7510 is denominated a "fee" instead of a "tax" mean that it is not a tax? In our view it does not since it does not meet the normal criteria for a "fee."

Typically a fee is a governmental exaction "charged in connection with regulatory activities which fees do not exceed the reasonable cost of providing services necessary to the activity for which the fee is charged and which are not levied for unrelated revenue purposes" (*Mills* v. *County of Trinity* (1980) 108 Cal.App.3d 656, 659-660, [fees for processing subdivision, zoning and other applications]) or "is an exaction imposed as a precondition for the privilege of developing . . . land . . . commonly imposed on developers by local governments in order to lessen the adverse impact of increased population generated by the development" (*Russ Bldg. Partnership* v. *City and County of San Francisco* (1987) 199 Cal.App.3d 1496, 1504 [transit impact fee].)

Furthermore, where fees are required, the person or entity incurs them through voluntary action, that is, by unilaterally requesting governmental services or by deciding to develop land. As noted in *Trent Meredith, Inc.* v. *City of Oxnard* (1981) 114 Cal.App.3d 317, 328, relating to school impact fees:

> "The dedication of land or the payment of fees as a condition precedent to development is voluntary in nature. Even though the developer cannot legally develop without satisfying the condition precedent, he voluntarily decides whether to develop or not to develop. . . ."

Or as stated in *Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 177 Cal.App.3d 892, 907: "Moreover, the ordinance [requiring a fee to maintain low cost housing in residential-hotel units] is not compulsory in nature, since fees are exacted only if the property owner elects to convert his property to another use."

In short, "fees" are typically charges <u>voluntarily incurred</u> and imposed to cover the cost of requested governmental services or to compensate for the increased burden on or demand for public services resulting from land or real property development. (See also, e.g., 71 Ops.Cal.Atty.Gen. 163 (1988) and 70 Ops.Cal.Atty.Gen. 153 (1987) for a detailed discussion of the

distinctions between "taxes," "special assessments," and "fees".) Taxes on the other hand, are governmental levies made for general revenue ("general taxes") or for specific governmental purposes ("special taxes"). (§ 53721; *San Marcos Water Dist.* v. *San Marcos Unified School Dist.*, *supra*, 42 Cal.3d 154, 162, 168.)

Accordingly, we conclude that the "fee for general governmental purposes" imposed by section 7510 is not a "fee" at all. Nor can the use of such terminology determine its legal character. (Cf. *San Marcos Water Dist.* v. *San Marcos Unified School Dist.*, *supra*, 42 Cal.3d 154 ["Sewer capacity right fee" an unauthorized "special assessment"]); *County of Riverside* v. *Idyllwild County Water Dist.* (1978) 84 Cal.App.3d 655 ["capital cost sewer charge" an unauthorized special assessment against public property].) Or as stated in *Flynn* v. *San Francisco* (1941) 18 Cal.2d. 210, 214, holding a purported "occupation tax" to be actually a property tax on vehicles:

"The character of a tax must be determined by its incidents, and from the material and legal effect of the language employed in the act. . . . The nomenclature is of minor importance, for the court will look beyond the mere title or the bare legislative assertion. . . ."

Likewise, the character of the fee imposed by section 7510 must be determined by its incidents, and from the natural and legal effect of the language employed in the act. Since the "fee" is based upon the ownership of real property and is collected for general governmental purposes, it is actually a real property tax. (*San Marcos Water Dist.* v. *San Marcos Unified School Dist.*, *supra*, 42 Cal.3d, 154, 162.) As such its imposition upon PERS would contravene Article XIII, section 3(a) of the California Constitution.

This conclusion is supported by an analogous Court of Appeal decision, *John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372. In that case, the city enacted an ordinance which required the residents of retirement homes on property exempt from property taxation to pay an in lieu tax to the city. The Court held the ordinance to be void and unconstitutional, stating:

"The ordinance attempts to recover for the city the amount of tax money that has been lost because of the retirement home tax exempt status. Thus, the purpose of the ordinance exactly and precisely nullifies and frustrates the state welfare exemption of Revenue and Taxation Code section 214 and section 1(c) of Article XIII of the state Constitution." (*Id.*, at p. 385.)[2/]

The same reasoning is applicable to section 7510 with respect to Article XIII, section 3(a) of the state Constitution. Accordingly, we conclude that imposition of an in lieu fee for general governmental services upon PERS based upon its ownership of real property would be unconstitutional.

\* \* \* \* \*

---

2. In 1974 the "state welfare exemption" was moved from section 1(c) to section 4(b) of Article XIII of the Constitution.